AUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
MANI JACOB, et al.,                   :
                                      :
                    Plaintiffs,       :
                                      :  11 Civ. 0160 (JMO)(THK)
          -against-                   :
                                      :     **MEMORANDUM OPINION**
                                      :          **AND ORDER**
DUANE READE, INC., et al.,            :
                                      :
                                      :
                    Defendants.       :
-----------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiffs in this action are Assistant Store Managers who are pursuing a collective action for overtime wages, under the Fair Labor Standards Act ("FLSA"), against Defendants Duane Reade, Inc. and Duane Reade Holdings, Inc. ("Duane Reade"). Presently before the Court is a letter motion filed by Duane Reade, for a protective order declaring an email that was inadvertently produced in discovery to be protected by the attorney-client privilege and ordering its return. (See Stephen A. Fuchs, Esq., Letter to the Court, dated Jan. 24, 2012 ("Fuchs Jan. 24 Ltr.").) Plaintiffs oppose the motion, arguing that the document in issue is not protected by the attorney-client privilege and, alternatively, that any privilege has been waived. (See Lewis M. Steel, Esq., Letter to the Court, dated Jan. 31, 2012 ("Steel Jan. 31 Ltr.").) For the reasons set forth below, the Court concludes that the document in issue is a privileged attorney-client communication, but that the

privilege has been waived.

## FACTUAL BACKGROUND

On November 8, 2011, a two-page email was produced to Plaintiffs as part of an ongoing production of electronically stored information ("ESI") relating to Defendant's former Vice President of Human Resources, Jim Scarfone. (See Fuchs Jan. 24 Ltr., Ex. 1.) According to Defendants' counsel, the ESI production involved the review of over two million documents in less than a month; that review was accomplished with the assistance of an outside vendor and document review team.

The email in question is from Suzanne Lazarchick, Duane Reade's Human Resources Manager, to Robin Costa, the Senior Director of Human Resources, which Costa thereafter communicated to Jim Scarfone. According to Lazarchick, she was a member of a Duane Reade task force charged with revising the job description for Assistant Store Managers.  To that end, a task force meeting was held, with Lazarchick, two Regional Directors of Operations, and Julie Ko, in-house legal counsel, in attendance.  As reflected in the email, at the meeting the two Regional Directors reported on what duties the Assistant Store Managers were not performing, and Ko advised those present that it was necessary for Assistant Store Managers to perform those tasks in order for their responsibilities to exempt them from the coverage of the FLSA.  In the email,

2

however, Julie Ko's last name was not mentioned and she was simply identified as Julie. The remainder of the email reflects a proposal for training management personnel so that they understand their management responsibilities and that they are "exempt" employees under the FLSA.

On November 9, 2011, the morning after the email was produced to Plaintiffs, Plaintiffs deposed Mr. Scarfone about its contents. The deposition was defended by one of Defendants' attorneys in this litigation, who also conducted some redirect examination with respect to the email. He did not raise a privilege objection at the deposition or attempt to identify who the "Julie" was who was referred to in the email. Nor did he ask Mr. Scarfone whether he could identify Julie. There were apparently several breaks at the deposition after the email was introduced, including a lunch break, and that time was not used to ascertain Julie's identity. Nevertheless, the same attorney defended another deposition three weeks earlier, at which Julie Ko was identified as Defendants' former in-house counsel.

On January 13, 2012, Plaintiffs noticed Ms. Lazarchick's deposition. (The deposition notice was issued after the discovery deadline had passed.) In response to receiving the deposition notice, Duane Reade's counsel examined documents associated with Ms. Lazarchick, and its lead counsel in this litigation determined,

3

on January 17, 2012, that the Lazarchick email in issue contained privileged information because Julie Ko was involved in the meeting, at which she was given information and provided advice related to that information.   On the same date, Duane Reade's counsel sent an email to Plaintiffs' counsel asserting that the email was privileged and requesting that all copies be returned.

Plaintiffs contend that the email is a business document that is not privileged and, in any event, the privilege has been waived.

**DISCUSSION**

**I. Attorney-Client Privilege**

A threshold question is whether the email in issue is a privileged attorney-client communication.   The party asserting privilege has the burden of establishing privilege by showing, "1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice."   In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007).

To be privileged, a communication must be for the purpose of obtaining or providing legal advice and assistance.   Where, as here, in-house counsel, who are often business executives, are involved in the communication, "the question usually is whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice."   County of

4

Erie, 473 F.3d at 419; see also AIU Ins. Co. v. TIG Ins. Co., No.
07 Civ. 7052(SHS)(HBP), 2008 WL 4067437, at *6 (S.D.N.Y. Aug. 28,
2008) ("[W]here in-house counsel also serves as a business advisor
within the corporation, only those communications 'related to
legal, as contrasted with business, advice are protected.'")
(quoting TVT Records v. Island Def Jam Music Group, 214 F.R.D. 143,
144 (S.D.N.Y. 2003)).   The test to be employed is "whether the
predominant purpose of the communication is to render or solicit
legal advice." Erie, 473 F.3d at 420.  Although legal advice
"[f]undamentally . . . involves the interpretation and application
of legal principles to guide future conduct or to assess past
conduct," the role of corporate lawyers is broader and "not
demarcated by a bright line."   Id. at 419-20.   As the Second
Circuit has observed:

> The complete lawyer may well promote and reinforce the
> legal advice given, weigh it, and lay out its
> ramifications by explaining: how the advice is feasible
> and can be implemented; the legal downsides, risks and
> costs of taking advice or doing otherwise; what other
> persons are doing and thinking about the matter; or the
> collateral benefits, risks or costs in terms of expense,
> politics, insurance, commerce, morals, and appearances.
> So long as the predominant purpose of the communication
> is legal advice, these considerations and caveats are not
> other than legal advice or severable from it.

Id. at 420.

"The predominant purpose of a communication cannot be
ascertained by quantification or classification of one passage or

5

another; it should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting legal authorities and advice that can be given by a non-lawyer." Id. at 420-21. Moreover, even where the predominant purpose of a document or communication is business, that is, non-legal, such a document can also contain legal advice, which can be redacted on the basis of the attorney-client privilege. See id. at 421 n.8.

Plaintiffs question the bona fides of Defendants' claim that the email is a privileged communication. They argue that it appears to be a business document incorporating business advice and, at best, its privileged status is ambiguous.

The Court accepts that the meeting reflected in the email had a business purpose — Defendants acknowledge that they were engaged in the process of redrafting a job description and strategies for ensuring that Assistant Store Managers performed the duties in their job description. But business matters are often informed by legal requirements. Defendants assert that the meeting was held so that a Human Resources executive and in-house counsel could review the job description for Assistant Store Managers, who are classified as exempt employees under the FLSA, and compare it to the duties actually performed by Assistant Store Managers. The subject of the email and meeting was "FLSA-ASM," which suggests

6

that Assistant Store Managers' responsibilities were being assessed in the context of the requirements of a federal statute.   In the email, Ms. Ko received information from business managers and, in her role as legal counsel, gave legal advice on the requirements of the FLSA.   The email specifically states that "Julie emphasized that [the job duties identified] above are needed in order for the position to comply with the Duties portion of the FLSA test."   This type of advice — how to comply with regulatory or statutory requirements — is precisely the type of legal advice one would expect in-house counsel to provide to business people.

The proposals that came out of the meeting, however, contained in the second half of the email, reflect a business strategy for getting the Store Managers and Assistant Store Managers to view and treat the ASM's as managers.   There is nothing in the "Suggested Proposals" that reflects legal advice.   The Court, therefore, concludes that only the first half of the Lazarchick email is a privileged attorney-client communication.

## II. Waiver

The question that remains is whether Defendants waived the attorney-client privilege when they inadvertently produced the email to Plaintiffs' counsel.

The attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any

7

significant part of the communication to a third party or stranger
to the attorney-client relationship.  See Urban Box Office Network,
Inc. v. Interfase Managers, L.P., No. 01 Civ. 8854 (LTS)(THK), 2006
WL 1004472, at *3 (S.D.N.Y. Apr. 17, 2006); In re Grand Jury
Proceedings, No. M-11-189 (LAP), 2001 WL 1167497, at *7 (S.D.N.Y.
Oct. 3, 2001); In re Kidder Peabody Sec. Litig., 168 F.R.D. 459,
468 (S.D.N.Y. 1996).  A party who seeks to uphold the privilege
must take affirmative measures to maintain the confidentiality of
attorney-client communications.  See Salomon Bros. Treasury Litig.
v. Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993); In re
von Bulow, 828 F.2d 94, 100 (2d Cir. 1987); In re Horowitz, 482
F.2d 72, 82 (2d Cir. 1973).

     Here, Defendants claim that the privileged email was produced
inadvertently and, therefore, its production does not give rise to
a waiver of privilege.  The law governing waiver through
inadvertent disclosure was recently summarized by Judge Scheindlin,
of this Court:

     Although the federal courts have differed as to the legal
     consequences of a party's inadvertent disclosure of
     privileged information, the general consensus in this
     district is that the disclosing party may demonstrate, in
     appropriate circumstances, that such production does not
     constitute a waiver of the privilege or work-product
     immunity and that it is entitled to the return of the
     mistakenly produced documents. In determining whether an
     inadvertent disclosure waives privilege, courts in the
     Second Circuit have adopted a middle of the road
     approach. Under this flexible test, courts are called on

8

to balance the following factors: (1) the reasonableness
of the precautions to prevent inadvertent disclosure; (2)
the time taken to rectify the error; (3) "the scope of
the discovery;" (4) the extent of the disclosure; and (5)
an over[arching] issue of fairness.

Apionishev v. Columbia University in City of New York, No. 09 Civ.

6471 (SAS), 2012 WL 208998, at *11 (S.D.N.Y. Jan. 23, 2012)

(quoting Lava Trading, Inc. v. Hartford Fire Ins. Co., No. 03 Civ.

7037, 2005 WL 66892, at *2 (S.D.N.Y. Jan. 11, 2005) and United

States v. Rigas, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003) (internal

quotation marks and citations omitted)); accord Valentin v. Bank of

New York Mellon Corp., No. 09 Civ. 9448 (GBD)(JCF), 2011 WL

1466122, at *2 (S.D.N.Y. Apr. 14, 2011). See also Fed. R. Evid.

502(b) ("disclosure does not operate as a waiver in a Federal or

State proceeding if: (1) the disclosure is inadvertent; (2) the

holder of the privilege . . . took reasonable steps to prevent

disclosure; and (3) the holder promptly took reasonable steps to

rectify the error . . . .").

    There is no question that the production of the email in issue

was inadvertent. Moreover, although Plaintiffs question

Defendants' assertion that they took reasonable steps to prevent

the disclosure of privileged material, the Court finds no basis to

do so. The Lazarchick email was disclosed as part of the

production of voluminous amounts of ESI. Defendants hired an

outside vendor to host the electronic data retrieved. They then

retained a team of between ten and fifteen contract attorneys, working under the supervision of a Project Manager and litigation counsel, to review the EST and produce relevant documents prior to depositions of witnesses, and to prevent the disclosure or privileged or irrelevant documents. Defendants prepared lists of names of attorneys whose communications could be privileged, employed search filters, and quality control reviews. The reason that the email in question was not identified as privileged is that it was neither from nor to an attorney, no attorney was copied on the email, and only the first name of the attorney at the meeting was contained in the body of the email. Under the circumstances, the Court is unable to conclude that Defendants did not employ reasonable measures to prevent the disclosure of privileged material. Cf. Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc., No. 96 Civ. 2064 (RWS), 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996) ("Courts have most often upheld [privilege] protection despite inadvertent disclosure when a small number of privileged documents were inadvertently disclosed as part of a large production of discovery materials, and the disclosure of the privileged documents was careless, not egregious.").

The remaining issue is whether Defendants acted promptly to rectify the disclosure of the privileged email. The Court concludes that they did not.

Defendants argue that it was not until Ms. Lazarchick's deposition was noticed on January 13, 2012, that they reviewed relevant documents and, on January 17, 2012, realized that the privileged email had been produced to Plaintiffs in an earlier production.  They then promptly requested its return.  Although this was approximately two months after the email was produced and used as a basis for questioning Mr. Scarpone at his deposition, they contend that the relevant time-frame is triggered by when they realized that the email was privileged.

"Inadvertent disclosure has been held to be remedied when the privilege is asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents."  Id. at *5; see also LaSalle National Bank Assn. v. Merrill Lynch Mortgage Lending, No. 04 Civ. 5452 (PKL), 2007 WL 2324292, at *5 (S.D.N.Y. Aug. 13, 2007).

The Court finds that Defendants did not act promptly or diligently in rectifying the inadvertent disclosure.  It is ironic that Defendants fault Plaintiffs' counsel for a purported ethical lapse in failing to refrain from reviewing the document and alerting Defendants' counsel that they had received the document, because, according to Defendants, on its face the email contains "at the very least — secret and confidential information not intended for Plaintiffs' counsel, that Plaintiffs' counsel should

11

have been aware would raise a privilege argument." (Fuchs Jan. 24 Ltr. at 3.) Yet, even when Defendants' counsel became aware of the email which, on its face, suggested a privilege argument, he allowed a witness to be deposed about it, failed to make efforts to ascertain the identity of Julie Ko, and failed to raise a privilege objection or demand the email's return for more than two months. The only justification offered for this delay is that other things were going on in the litigation and it was not until Lazarchick's deposition was noticed that counsel focused on the document. By inference, Defendants suggest that had Plaintiffs' counsel not noticed Ms. Lazarchick's deposition, they would never have focused on the email, even though it had been used at the Scarpone deposition and it had been in Plaintiffs' possession for two months.

Defendants rely on the Valentin decision for the proposition that "the length of delay in claiming the privilege should be measured from when the producing party learns of the disclosure, not from the time of the disclosure itself." Valentin, 2011 WL 1466122, at *3. The Valentin case, however, is factually distinguishable. In that case, the defendant bank produced documents that included two hand-written pages of notes, but it did not know who had authored the notes. After the plaintiff's attorney demanded the production of any additional documents on the

12

same subject as the notes, the defendant's counsel asked the human resources department to attempt to identify the author of the notes. The human resources department was initially unable to do so, but ultimately determined that the notes were in the handwriting of the former in-house counsel. Once the bank was able to confirm that the notes were authored by former in-house counsel, it asserted privilege. The court declined to find undue delay under those circumstances.

Here, there were numerous red flags that should have suggested to Defendants' counsel that the email was likely to contain privileged information. First, the subject line of the email referred to the FLSA, a federal statute. Second, the advice Julie gave at the meeting entailed satisfying the requirements of the FLSA — another obviously legal matter. Indeed, even Defendants argue that Plaintiffs' counsel should have been aware that the email contained "secret and confidential information . . . [that] would raise a privilege argument," and that they should have alerted defense counsel that they received it. (Fuchs Jan. 24 Ltr. at 3); cf. Clarke v. J.P. Morgan Chase & Co., No. 08 Civ. 02400 (CM)(DF), 2009 WL 970940, at *5 (S.D.N.Y. Apr. 10, 2009) ("At a minimum, if . . . the email contained an analysis that could only have come from an attorney, Defendant should have begun an investigation at that time as to the potentially privileged status

13

of the document."). Moreover, the email was the subject of examination at the Scarpone deposition and no issue of privilege was raised. Third, it would have been quite easy to identify Julie on the same day as the deposition, as anyone in the Human Resources Department, or anyone who had attended the meeting, would have known that she was Defendants' in-house counsel. Finally, Julie Ko had been identified as in-house counsel at another deposition taken only three weeks earlier. Yet, no attempt was made to investigate Julie's identity or ascertain the privileged nature of the email until two months later, and even then, it took Plaintiffs' further interest in the subject of the email to prompt Defendants' investigation.

Under the circumstances, the Court concludes that Defendants did not act diligently in rectifying the inadvertent disclosure. See Clarke, 2009 WL 970940, at *6 (finding that delay of approximately four months between learning that a potentially privileged email was produced and the assertion of privilege was a sufficiently long period to warrant a finding of waiver); LaSalle, 2007 WL 2324292, at *2, *5 (finding that where a deponent was questioned about a document that was first viewed as "possibly" an attorney-client communication and then determined to be a communication with an attorney, waiting one month to demand return of the document constituted a waiver of privilege); Liz Claiborne,

14

1996 WL 668862, at *5 (waiting one month to request the return of privileged notes supported a finding of waiver).

With respect to the extent of the disclosure, here there has been complete disclosure, since the email itself is brief, it was fully read and considered by Plaintiffs' counsel, and it was the subject of deposition questions. Cf. Liz Claiborne, 1996 WL 668862, at *5 (finding that where the defendants had access to the privileged document overnight, the document was brief and easily reviewed in a short time, and was the subject of deposition of questions prior to the assertion of privilege, "the completeness of the disclosure . . . supports a finding of waiver.").

Finally, because the email has already been the subject of deposition questions, and Defendants so delayed in seeking the return of the email, the concerns of fairness and prejudice tip in Plaintiffs' favor. See LaSalle Bank, 2007 WL 2324292, at *6 (finding that delay in asserting privilege undercut the producing party's claim of privilege and that because the plaintiff had taken discovery related to the privileged document, the plaintiff would suffer greater prejudice if the disclosure was found not to serve as a waiver). Moreover, any prejudice to Defendants will be limited as the waiver here extends only to the email that was produced, and not to all attorney-client communications on the subject of the email.

15

## CONCLUSION

For the foregoing reasons, the Court concludes that any privilege with respect to the email in question was waived.

So Ordered.


_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE


Dated: February 28, 2012
       New York, New York

16