**OUTTEN & GOLDEN LLP**
Adam T. Klein
Molly A. Brooks
Sandra E. Pullman
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**GOTTLIEB & ASSOCIATES**
Jeffrey Gottlieb
Dana Gottlieb
150  East 18th Street, Suite PHR
New York, New York 10003
Telephone: (212) 228-9795

**KLAFTER OLSEN & LESSER**
Seth R. Lesser
Fran L. Rudich
Michael J. Palitz
Mark W. Gaffney
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANI JACOB and LESLEENA MARS, individually and on behalf all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DUANE READE, INC. and DUANE READE HOLDINGS, INC., <br><br> Defendants. | **11 Civ. 0160 (JPO) (JCF)** |

## PLANTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
## CLASS CERTIFICATION AND APPOINTMENT FOR CLASS COUNSEL

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

PROCEDURAL HISTORY.................................................................................................. 2

STATEMENT OF FACTS .................................................................................................. 3

    I.     This Court Has Already Certified a Class of Duane Reade's ASMs.................... 3

    II.    Duane Reade's Store Operations Are Standardized ............................................. 3

          A.     Duane Reade's Uniform Corporate Reporting Structure........................... 4

          B.     Duane Reade's Centralized Administration................................................. 4

          C.     Duane Reade Maintains Uniform Policies and Procedures that
                  Apply to All ASMs ...................................................................................... 5

    III.   All ASMs Have the Same Primary Duties............................................................ 7

    IV.  Duane Reade Classifies All ASMs as Exempt Employees Without
         Conducting an Individualized Inquiry of Their Duties......................................... 9

    V.    Duane Reade's Treatment of ASMs Has Not Materially Changed
         Since This Court Certified a Class of Duane Reade's ASMs................................ 9

ARGUMENT ..................................................................................................................... 11

    I.     The NYLL Protects Plaintiffs and the Proposed Class........................................ 11

    II.    ASMs' Overtime Claims are Well-Suited for Adjudication on a Class Basis...... 12

          A.     Courts in this Circuit Routinely Certify NYLL Misclassification
                  Cases .......................................................................................................... 12

          B.     A Factfinder Can Make the Same Type of Blanket Exemption
                  Determination that Duane Reade Made...................................................... 14

    III.   Plaintiffs Meet All of the Rule 23 Requirements................................................. 14

          A.     Plaintiffs Meet Each Rule 23(a) Requirement ........................................... 15

               1.     Numerosity................................................................................... 15

               2.     Questions of Law and Fact Are Common to the Class................. 15

3.      Plaintiffs' Claims Are Typical of the Class Claims...................... 17

4.      Plaintiffs Will Adequately Represent the Class........................... 18

B.      Plaintiffs Meet the Rule 23(b)(3) Requirements...................................... 20

1.      Common Questions Predominate ................................................. 20

2.      A Class Action is the Superior Mechanism ................................. 23

IV.     The Court Should Appoint Plaintiffs' Lawyers as Class Counsel...................... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alba v. Papa John's USA, Inc.*,
   No. 05 Civ. 7487, 2007 WL 953849 (C.D. Cal. Feb. 7, 2007)...............................................21

*Aponte v. Comprehensive Health Mgmt., Inc.*,
   No. 10 Civ. 4825, 2011 WL 2207586 (S.D.N.Y. June 2, 2011)...........................13, 16, 18, 23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)....................................................................................................19

*Bolanos v. Norwegian Cruise Lines Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. 2002) ..........................................................................................22

*Caissie v. BJ's Wholesale Club*,
   No. 08 Civ. 30220 (D. Mass.)................................................................................................24

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................................................12

*Chun-Hoon v. McKee Foods Corp.*,
   No. 05 Civ. 620, 2006 WL 3093764 (N.D. Cal. Oct. 31, 2006)............................................21

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198
   (S.D.N.Y. May 11, 2010)......................................................................................................19

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)....................................................................................................15

*Cuevas v. Citizens Fin. Grp., Inc.*,
   No. 10 Civ. 5582, 2012 WL 1865564 (E.D.N.Y. May 22, 2012)...............................13, 17, 18

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................................. passim

*Damassia v. Duane Reade, Inc.*,
   No. 04 Civ. 08819, 2009 WL 5841128 (S.D.N.Y. July 27, 2009) ........................................2, 3

*deMunecas v. Bold Food LLC*,
   No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ...........................................19

*Dorn v. Eddington Sec., Inc.*,
   No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)...........................................24

*Dziennik v. Sealift, Inc.*,
　　No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)...........................................19

*Goldman v. Radioshack Corp.*,
　　No. 03 Civ. 0032, 2005 WL 1124172 (E.D. Pa. May 9, 2005) .............................................22

*Han v. Sterling Nat'l Mortg. Co.*,
　　No. 09 Civ. 5589, 2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011)...................................passim

*Herring v. Hewitt Inc.*,
　　No. 06 Civ. 267 (D.N.J.) .................................................................................................19, 25

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
　　239 F.R.D. 363 (S.D.N.Y. 2007) ........................................................................................21

*In re Initial Pub. Offering Sec. Lit.*,
　　471 F.3d 24 (2d Cir. 2006)..................................................................................................15

*Jacob v. Duane Reade, Inc.*,
　　No. 11 Civ. 0160, 2012 WL 260230 (S.D.N.Y. Jan. 27, 2012)...................................1, 2, 3, 9

*Jacob v. Duane Reade, Inc.*,
　　No. 11 Civ. 0160, 2012 WL 651536 (S.D.N.Y. Feb. 28, 2012) ...........................................11

*Jankowski v. Castaldi*,
　　No. 01 Civ. 0164, 2006 WL 118973 (E.D.N.Y. Jan. 13, 2006)............................................22

*Johnson v. Brennan*,
　　No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011)..........................................19

*Khait v. Whirlpool Corp.*,
　　No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)..........................................19

*Krzesniak v. Cendant Corp.*,
　　No. 05 Civ. 05156, 2007 WL 1795703 (N.D. Cal. June 20, 2007) .......................................21

*Marisol A. by Forbes v. Guiliani*,
　　126 F.3d 372 (2d Cir. 1997)..................................................................................14, 15, 18

*McMahon v. Olivier Cheng Catering and Events, LLC*,
　　No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...........................................19

*Moore v. PaineWebber, Inc.*,
　　306 F.3d 1247 (2d Cir. 2002)..............................................................................................20

*Myers v. Hertz Inc.*,
　　624 F.3d 543 (2d Cir. 2010).............................................................................12, 17, 20, 21

*Nash, et al. v. CVS Caremark Corp.*,
No. 09 Civ. 079 (D.R.I.) ...................................................................................24

*In re Novartis Wage & Hour Litig.*,
611 F.3d 141 (2d Cir. 2010)......................................................................11, 12

*Reyes v. Altamarea Grp., LLC*,
No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011)......................19

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)...........................................................................18

*Ross v. RBS Citizens, N.A.*,
667 F.3d 900 (7th Cir. 2012) ..........................................................................14

*Shabazz v. Morgan Funding Corp.*,
269 F.R.D. 245 (S.D.N.Y. 2010) ....................................................................13

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
659 F.3d 234 (2d Cir. 2011)............................................................................18

*Stillman v. Staples, Inc.*,
No. 07 Civ. 849 (D.N.J. )..........................................................................19, 25

*Tierno v. Rite Aid Corp.*,
No. 05 Civ. 02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006).................21

*Torres v. Gristede's Operating Corp.*,
Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937
(S.D.N.Y. June 1, 2010)....................................................................16, 19, 22, 23

*In re Vivendi Universal, S.A.*,
242 F.R.D. 76 (S.D.N.Y. 2007) ......................................................................24

*Wal–Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)....................................................................................16

*Wang v. Chinese Daily News, Inc.*,
231 F.R.D. 602 (C.D. Cal. 2005) ....................................................................22

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ....................................................................23

*Westerfield v. Wash. Mut. Bank*,
Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084 (E.D.N.Y. June 26, 2009) ..............19, 24

*Whiteway v. FedEx Kinko's Office & Print Services, Inc.*,
No. 05 Civ. 2320, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006).........................22

*Youngblood v. Family Dollar Stores, Inc.*,
  No. 09 Civ. 3176, 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ..................................... passim

**STATUTES**

New York Labor Law §§ 650 *et seq.* ...................................................................................11, 16

**RULES AND REGULATIONS**

29 C.F.R. § 541.100(a) ...................................................................................................12

29 C.F.R. § 541.200(a) ...................................................................................................12

Federal Rule of Civil Procedure 23 ............................................................................ passim

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ...........................................................11, 12, 16

## INTRODUCTION

For the third time in seven years, Duane Reade assistant store managers ("ASMs") challenge Duane Reade's company-wide policy of classifying all ASMs as exempt from the overtime requirements of the New York Labor Law ("NYLL").  In a decision on the exact same issue, Judge Lynch granted class certification of *all* ASMs spanning two related cases, *Damassia v. Duane Reade, Inc*., 04-Civ-8819 (overnight ASMs) and *Chowdhury v. Duane Reade, Inc*., 06-Civ-2295 (daytime and evening ASMs).  That decision is attached hereto as Ex. A ("*Damassia* Class Cert. Decision") to the Declaration of Molly A. Brooks in Support of Motion for Class Cert. ("Brooks Decl.").[1]  Despite settling a class action for ASMs' unpaid overtime in 2009, Duane Reade continues to apply the same blanket exemption policy to all ASMs, who spend most of their time performing manual labor and customer service and typically work more than forty hours per week without overtime pay.

The class action device is designed for precisely this type of case.  ASMs' job duties, which are listed on a uniform ASM job description, do not vary from store to store and do not vary with respect to Duane Reade's decision to classify all ASMs as exempt from the NYLL's overtime requirements.  This Court has already established a Fair Labor Standard Act ("FLSA") collective, albeit under a lower standard, based on this evidence.  *Jacob v. Duane Reade, Inc.,* No. 11 Civ. 0160 (JPO), 2012 WL 260230, at *4 (S.D.N.Y. Jan. 27, 2012).  The extensive record here easily satisfies the class certification requirements under Federal Rule of Civil Procedure 23.

On behalf of over seven hundred low-wage retail workers whom Duane Reade classifies as exempt, Plaintiffs respectfully request that the Court certify a class of ASMs who worked at

---

[1]        Unless otherwise indicated, all exhibits are attached to the Brooks Decl.

Duane Reade and were not paid proper overtime premium compensation for all hours that they worked in excess of forty in a workweek at any time between January 8, 2009[2] and the date of final judgment in this matter.

## PROCEDURAL HISTORY

Plaintiff Mani Jacob filed a Class Action Complaint in the Southern District of New York on January 7, 2011, alleging that Duane Reade failed to pay its ASMs overtime premium pay as required under federal and state law.  Brooks Decl. ¶ 4.  On the same day, Plaintiff Lesleena Mars filed a similar Complaint, alleging the same violations of the FLSA on behalf of ASMs in the Eastern District of New York.  *Id.* at. ¶ 5.  Mars then voluntarily dismissed her Complaint and joined Jacob's lawsuit.  *Id.* at ¶ 6.  On March 24, 2011, Jacob filed his Amended Class Action Complaint adding Mars as a named plaintiff.  *See* Ex. B, Second Amended Class Action Complaint ("Compl.").  On April 5, 2011, Duane Reade filed an Answer claiming that all of its ASMs are properly classified as "exempt executives and/or administrators," and are therefore not entitled to overtime premium pay.  *See* Ex. C, Defendants' Answer to Amended Complaint and Statement of Additional and Affirmative Defenses ("Ans."), Affirmative Defense 7 at 49.

Plaintiffs moved for conditional certification of the FLSA collective, which the Court granted on January 27, 2012.  *Jacob*, 2012 WL 260230, at *10.  The Court found that all ASMs were similarly situated, in part because "Duane Reade readily admits that it uniformly classifies all ASMs as exempt."  *Id.* at *5.  Moreover, the Court found that Duane Reade "did not consider

---

[2]      Pursuant to the Final Order and Judgment Granting Plaintiffs' Motion for Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, and An Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards in *Damassia*, ASMs' NYLL claims have been released through January 7, 2009.  *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 08819, 2009 WL 5841128 (S.D.N.Y. July 27, 2009).

the differences in ASMs' job duties sufficient to require Duane Reade to undertake an individual analysis before categorically classifying all ASMs as exempt." *Id*. at *8.

Plaintiffs now move for Rule 23 certification of the class to adjudicate their NYLL claims.

## STATEMENT OF FACTS

### I.   This Court Has Already Certified a Class of Duane Reade's ASMs.

In 2008 Judge Lynch certified a class of Duane Reade ASMs. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008). In *Damassia*, the Court certified all ASMs (consolidated from two related cases) as one class, noting that "'the business practices at issue in this case are uniform among its stores and ... the duties and responsibilities of assistant managers are centrally derived." *Id.* at *4 (internal citations omitted). The cases eventually settled. *See Damassia*, 2009 WL 5841128. ASMs' duties and exempt classification have not changed since the *Damassia* ASM class was certified.[3] Moreover, as discussed below, the handful of superficial reactionary measures Duane Reade took after *Damassia* merely serve to underscore the appropriateness of certifying all ASMs as a single class.[4]

### II.   Duane Reade's Store Operations Are Standardized.

Duane Reade is the largest chain of drugstores in the New York metropolitan area, with more than 253 stores, and is the fastest-growing drugstore chain in the industry.[5] Duane Reade's

---

[3]     Ex. D (Excerpts from Deposition Transcript of Robin Costa, dated July 19, 2011 ("Costa Tr.")) 12:23-15:16; 22:3-20; Ex. E (Excerpts from Deposition Transcript of Francine Baruch, dated August 18, 2011 ("Baruch Tr.")) 14:12-15:18.

[4]     *See infra* Statement of Facts, Part V.

[5]     Duane Reade, http://duanereade.com/Company.aspx (last visited Aug. 30, 2012).

corporate headquarters develop and implement uniform practices for employees at every Duane Reade store, with no variation among stores.[6]

### A.    Duane Reade's Uniform Corporate Reporting Structure.

Duane Reade's store employees are all organized in a typical retail hierarchy.  Each store is run by a store manager, who is responsible for the operation of the store at all times.[7]  Shift leaders rank below ASMs, who in turn rank below store managers.[8]  The store managers report to district managers, who answer to executives in Duane Reade's central offices in midtown Manhattan.[9]

### B.    Duane Reade's Centralized Administration.

The executives in Duane Reade's central office direct the administrative and business functions for the entire company.  The central human resources department ("HR Department") in the corporate office mandates uniform personnel policies and oversees the day-to-day operations of the stores, including handling employee complaints, compensation, payroll, recruiting, hiring, and enforcement of the Code of Conduct, a set of rules proscribing employee behavior.[10]  In addition, many personnel decisions are made at the corporate level in order to

---

[6]    Ex. E, (Baruch Tr.) 135:5-160:16; Ex. F (Excerpts from Deposition Transcript of Natasha Gary, dated October 28, 2011 ("Gary Tr.")) 66:10-69:15; Ex. G (Excerpts from Deposition Transcript of Vincent Anthony Scarfone, dated November 9, 2011 ("Scarfone Tr.")) 36:7-37:10, 48:16-49:5.

[7]    Ex. E (Baruch Tr.) 43:6-25; Ex. H (Excerpts from Deposition Transcript of Greg Calvano, dated October 18, 2011 ("Calvano Tr.")) 38:22-39:11.

[8]    Ex. E (Baruch Tr.) 45:7-25; Ex. H (Calvano Tr.) 37:22-13.

[9]    Ex. H (Calvano Tr.) 32:19-34:24.

[10]    Ex. I (Excerpts from Deposition Transcript of Michelle Flete, dated September 12, 2011 ("Flete Tr.")) 55:25-56:18, 59:22-67:2; Ex. G (Scarfone Tr.) 13:3-10; Ex. J (Excerpts from Deposition Transcript of Shirla Israel, dated October 24, 2011 ("Israel Tr.")) 23:8-20; Ex. K (Excerpts from Deposition Transcript of Robyne Garrison, dated September 8, 2011 ("Garrison Tr.")) 21:12-22:22.

4

ensure uniform application of personnel policies.[11]

The HR Department also strives for uniformity by controlling retail employee training.[12] It produces uniform training materials and policy manuals for all stores.[13]  Duane Reade's corporate headquarters issues these uniform training materials, from which the HR Department's trainers annually conduct the same company-wide training for all ASMs.[14]

### C.     Duane Reade Maintains Uniform Policies and Procedures that Apply  to All ASMs.

All ASMs are expected to work at least 55 hours per week, and none are paid overtime.[15] Duane Reade admits that it applies this company-wide policy to all ASMs in all of its stores, regardless of the shift they work or the location of the store.[16]

In addition, Duane Reade issues uniform directives from its corporate office to every store that mandate the duties of ASMs and strictly control how ASMs perform those duties.  For example, the corporate office controls how ASMs display merchandise in the store.  As part of their regular job duties, ASMs are required to stock merchandise on store shelves by following diagrams called "planograms," which are generated by Duane Reade's corporate office and are identical across every store.[17]  Duane Reade's corporate office also mandates a uniform protocol

---

[11]     Ex. G (Scarfone Tr.) 90:15-93:24, 152:6-154:2; Ex. H (Calvano Tr.) 116:25-118:16; Ex. I (Flete Tr.) 82:4-95:12.
[12]     Ex. D (Costa Tr.) 88:18-89:15.
[13]     Ex. D (Costa Tr.) 68:22-69:5; Ex. F (Gary Tr.) 67:10-69:15; Ex. K (Garrison Tr.) 85:20-87:4; 153:15-155:3.
[14]     Ex. D (Costa Tr.) 7:12-8:24; Ex. G (Scarfone Tr.) 84:18-85:21; Ex. H (Calvano Tr.) 111:16-115-20; Ex. K (Garrison Tr.) 59:13-61:8; Ex. L (Excerpts from Deposition Transcript of Tenyia Williams, dated October 25, 2011 ("Williams Tr.")) 63:17-64:11; Ex. M (Exhibit 5 to the Deposition Transcript of Robin Costa, Bates Nos. D0021957-21998 ("Leading at DR")).
[15]     Ex. D (Costa Tr.) 126:9-22; Ex. I (Flete Tr.) 37:8-38:10; Ex. H (Calvano Tr.) 125:17-125:19; Ex. L (Williams Tr.) 93:8-94:11; Ex. E (Baruch Tr.) 88:7-25.
[16]     Ex. D (Costa Tr.) 22:3-13; 126:9-22; Ex. E (Baruch Tr.) 175:11-177:11; Ex. N (Exhibit 9 to the Deposition Transcript of Robin Costa Bates No. D00070 ("FLSA Acknowledgement")).
[17]     Ex. H (Calvano Tr.) 108:14-110:10; Ex. O (Excerpts from Deposition Transcript of

regarding the use of a centralized computer program for ordering the store merchandise. Specifically, ASMs are required to scan items on the shelves with a computerized scan gun programmed by Duane Reade's corporate office to track inventory.  A central Duane Reade office receives the scanned inventory amounts, determines the supply needed and orders merchandise for the store.[18]  No individual decisions about ordering are made at the store level.[19]

Further, Duane Reade maintains uniform procedures for all money-handling by ASMs through the mandatory use of standardized forms in every store, including detailed chain-wide procedures for bank deposits, safe drops, moneygrams, and armored courier pickups.[20]  ASMs have no control over the store's profit reports; rather, the store computer generates a daily

---

Lesleena Mars, dated June 14, 2011 ("Mars Tr.")) 159:14-160:18; Ex. P (Excerpts from Deposition Transcript of Kumar Bharat, dated June 7, 2011 ("Bharat Tr.")) 46:6-47:7; Ex. Q (Excerpts from Deposition Transcript of Carmen Ortiz, dated June 20, 2011 ("Ortiz Tr.")) 79:5-80:17; Ex. R (Excerpts from Deposition Transcript of Darnell Forde, dated June 21, 2011 ("Forde Tr.")) 144:15-145:22; Ex. S, Excerpts from Deposition Transcript of Usha Mehta, dated July 22, 2011 ("Mehta Tr.") 87:14-88:18; Ex. T (Excerpts from Deposition Transcript of Sanjeev Farid, dated May 17, 2011 ("Farid Tr.")) 202:13-203:8; Ex. U (Excerpts from Deposition Transcript of Forbes Lewis, dated May 19, 2011 ("Lewis Tr.")) 224:3-226:4; Ex. V (Excerpts from Deposition Transcript of Ousmane Diop, dated May 24, 2011 ("Diop Tr.")) 136:23-139:23; Ex. W (Excerpts from Deposition Transcript of Habibul Islam, dated June 2, 2011 ("Islam Tr.")) 214:11-21; Ex. X (Excerpts from Deposition Transcript of Esther Crooks, dated October 28, 2011 ("Crooks Tr.")) 44:7-45:21; Ex. Y (Excerpts from Deposition Transcript of Jenelle Bastien, dated November 22, 2011 ("Bastien Tr.")) 57:12-21; Ex. Z (Excerpts from Deposition Transcript of Lukasz Zurawski, dated November 1, 2011 ("Zurawski Tr.")) 39:24-40:11; Ex. AA (Excerpts from Deposition Transcript of Marlon Jean-Baptiste, dated November 11, 2011 ("Jean-Baptiste Tr.")) 150:25-151:9; Ex. BB (Excerpts from Deposition Transcript of Allen Vuchetich, dated November 3, 2011 ("Vuchetich Tr.")) 70:4-72:25; Ex. CC (Excerpts from Deposition Transcript of Robert Neuner, dated November 4, 2011 ("Neuner Tr.")) 55:6-56:10; Ex. DD (Excerpts from Deposition Transcript of Jessica Kudrna, dated November 8, 2011 ("Kudrna Tr.")) 34:18-35:14.

[18]    Ex. R (Forde Tr.) 132:21-135:24; Ex. EE (Excerpts from Deposition Transcript of Laurel DeMarco, dated July 6, 2011 ("DeMarco Tr.")) 86:12-18; Ex. S (Mehta Tr.) 86:5-11; Ex. U (Lewis Tr.) 149:20-150:5; Ex. V (Diop Tr.) 148:2-149:13; Ex. P (Bharat Tr.) 40:7-14; Ex. Y (Bastien Tr.) 71:13-73:24; Ex. BB (Vuchetich Tr.) 143:23-145:4.

[19]    Ex. P (Bharat Tr.) 40:7-14; Ex. R (Forde Tr.) 132:21-135:24.

[20]    Ex. E (Baruch Tr.) 139:4-11; 143:5-24; 146:5-147:7; 149:7-150:14; 154:16-155:13; Ex. FF (Money-Handling Forms, Bates Nos. D0021574 and D0021719).

financial report of the day's sales, which is automatically sent to the corporate office.[21]

Corporate handles incidents involving loss of merchandise, which ASMs merely document on a

standardized form and send to the corporate office.[22]  Duane Reade's corporate management also

has an established protocol for ASMs to follow when handling cash register shortages, requiring

ASMs to complete a write-up form if registers are short by $4.00 or more.[23]

## III.   <u>All ASMs Have the Same Primary Duties.</u>

The testimony of Duane Reade's own ASM witnesses and  opt-in plaintiffs alike

demonstrates that ASMs' primary duties in every Duane Reade store are virtually identical,

notwithstanding the store or the shift during which they work.[24]

ASMs' primary duties are largely identical to that of the non-exempt employees they

work alongside.[25]  Duane Reade admits that all ASMs are required to unpack delivery trucks,

reconcile the merchandise, stock the shelves, run the cash register, help customers find products,

and clean the stores.[26]  ASMs spend more than 50% of their shifts performing this manual labor

---

[21]     Ex. E (Baruch Tr.) 155:14-156:25; Ex. GG (Daily Financial Report, Bates No. D0021377).

[22]     Ex. E (Baruch Tr.) 144:14-145:23; Ex. HH (Loss Prevention Incident Report, Bates No. D0021617).

[23]     Ex. II (Excerpts from Deposition Transcript of Hanna Saddik, dated May 13, 2011 ("Saddik Tr.")) 238:20-239:7; Ex. W (Islam Tr.) 250:3-251:2; Ex. Z (Zurawski Tr.) 68:2-25; Ex. AA (Jean-Baptiste Tr.) 51:3-53:5.

[24]     Ex. O (Mars Tr.) 107:7-11; Ex. Q (Ortiz Tr.) 117:8-13; Ex. T (Farid Tr.) 255:14-23; Ex. V (Diop Tr.) 55:15-56:14, 103:15-104:9; Ex. W (Islam Tr.) 104:8-13; Ex. X (Crooks Tr.) 96:14-97:13; Ex. II (Saddik Tr.) 166:11-167:11; Ex. JJ (Excerpts from Deposition Transcript of Mani Jacob, dated May 26, 2011 ("Jacob Tr.")) 328:21-331:11; Ex. KK (Excerpts from Deposition Transcript of Manuel Mendez, dated July 7, 2011 ("Mendez Tr.")) 106:6-22.

[25]     Ex. Q (Ortiz Tr.) 21:7-15; Ex. R (Forde Tr.) 232:20-233:6; Ex. T (Farid Tr.) 255:9-13; Ex. V (Diop Tr.) 195:18-22; Ex. W (Islam Tr.) 243:17-246:16; Ex. X (Crooks Tr.) 83:21-85:19; Ex. EE (DeMarco Tr.) 119:11-120:17; Ex. II (Saddik Tr.) 18:18-19:13; Ex. JJ (Jacob Tr.) 328:21-329:11.

[26]     Ex. K (Garrison Tr.) 64:6-66:25.

and customer-service work.[27]  Duane Reade uses one job description for all ASMs.[28]

ASMs' ability to exercise discretion and independent judgment is uniformly constrained regardless of the store or shift to which the ASM is assigned.[29]  ASMs do not have the authority to give promotions or demotions, set rates of pay, fire or discipline employees, or authorize overtime.[30]  In or around 2009, Duane Reade implemented a program of hiring at the store level and accordingly designated a group of approximately 92 "hiring managers" who were trained to conduct interviews and make recommendations about applicants, only a handful of whom were ASMs.[31]  Aside from these hiring managers, none of the over 700 ASMs are involved in the hiring process, nor are any ASM recommendations given particular weight.[32]  Further, store managers provide instructions for ASMs daily, by telephone or notes, specifying assignments for ASMs and hourly workers alike.[33]

---

[27]   Ex. P (Bharat Tr.) 254:2-255:20; Ex. R (Forde Tr.) 232:20-233:6; Ex. T (Farid Tr.) 101:17-102:19, 255:24-256:25; Ex. U (Lewis Tr.) 98:25-100:21; Ex. V (Diop Tr.) 114:3-115:19, 201:7-203:1; Ex. W (Islam Tr.) 45:9-47:9; Ex. Z (Zurawski Tr.) 55:25-56:22; Ex. BB (Vuchetich Tr.)142:4-143:14; Ex. EE (DeMarco Tr.) 182:5-19; Ex. II (Saddik Tr.) 25:5-15; Ex. KK (Mendez Tr.) 232:2-18; Ex. LL (Excerpts from Deposition Transcript of Carlos Echevarria, dated August 11, 2011 ("Echevarria Tr.")) 89:24-90:23.

[28]   Ex. D (Costa Tr.) 31:13-32:25; Ex. MM (Exhibit 1 to the Deposition Transcript of Robin Costa, Bates No. D00631-632 ("ASM Job Description")).

[29]   Ex. II (Saddik Tr.) 168:3-169:12; Ex. LL (Echevarria Tr.) 30:4-7, 89:3-16

[30]   Ex. G (Scarfone Tr.) 138:2-141:19, 151:2:155:21; Ex. O (Mars Tr.) 150:15-151:20; Ex. X (Crooks Tr.) 35:5-11; 99:24-102:10; Ex. Y (Bastien Tr.) 114:18-23; Ex. Z (Zurawski Tr.) 73:2-22, 80:24-83:4; Ex. KK (Mendez Tr.) 150:22-151:18; Ex. V (Diop Tr.) 60:14-25; Ex. JJ (Jacob Tr.) 311:13-16; Ex. P (Bharat Tr.) 58:13-59:18.

[31]   Ex. F (Gary Tr.) 23:4-26:5 (4-5 hiring managers are ASMs); Ex. D (Costa Tr.) 36:14-24 (15-20 ASMs have been trained as hiring managers); Ex. G (Scarfone Tr.) 19:9-22:16.

[32]   Ex. E (Baruch Tr.) 77:6-17; Ex. O (Mars Tr.) 117:11-119:23; Ex. P (Bharat Tr.) 58:13-59:3; Ex. R (Forde Tr.) 179:11-180:7; Ex. S (Mehta Tr.) 44:2-19; Ex. T (Farid Tr.) 191:23-193:25; Ex. V (Diop Tr.) 60:14-25; Ex. AA (Jean-Baptiste Tr.) 168:5-169:25; Ex. CC (Neuner Tr.) 37:11-39:19; Ex. EE (DeMarco Tr.) 180:10-19; Ex. JJ (Jacob Tr.) 311:6-12; Ex. KK (Mendez Tr.) 149:9-151:18.

[33]   Ex. O (Mars Tr.) 101:12-102:23; Ex. P (Bharat Tr.) 78:3-79:7, 150: 3-18; Ex. Q (Ortiz Tr.) 110:24-111:6; Ex. T (Farid Tr.) 191:24-194:9; Ex. X (Crooks Tr.) 33:7-35:24; Ex. CC (Neuner Tr.) 90:9-14; Ex. II (Saddik Tr.) 140:6-142:24; Ex. LL (Echevarria Tr.) 25:22-27:21.

## IV.    Duane Reade Classifies All ASMs as Exempt Employees Without Conducting an Individualized Inquiry of Their Duties.

Duane Reade has a uniform, company-wide policy of classifying all ASMs as exempt from the protections of the NYLL[34]  Duane Reade makes this blanket classification without conducting an individualized inquiry of ASMs' duties.[35]  As this Court noted when it granted conditional certification, "Defendants did not consider the differences in ASMs' job duties sufficient to require Duane Reade to undertake an individual analysis before categorically classifying all ASMs as exempt from FLSA."  *Jacob,* 2012 WL 260230, at *8.

Duane Reade's Human Resources Director Robin Costa was part of a team consisting of a human resource manager, two senior directors of stores, and a district manager, who revised the ASM job description after the *Damassia* settlement.[36]  Ms. Costa admitted that the team did not conduct an individualized inquiry with ASMs to determine their job duties.[37]  In fact, Ms. Costa did not speak to a single ASM about their job duties prior to rewriting the job description and did not know if anyone on her team did.[38]  No other steps were taken to determine ASMs' job duties or evaluate their exempt status.[39]

## V.    Duane Reade's Treatment of ASMs Has Not Materially Changed Since This Court Certified a Class of Duane Reade's ASMs.

Duane Reade has not changed its operations since Judge Lynch certified a class of ASMs identical to the putative class here.  *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008).  ASMs' primary job duties remain the same today, and Duane Reade still uniformly

---

[34]    Ex. D (Costa Tr.) 22:3-20; Ex. E (Baruch Tr.) 175:11-177:11; Ex. N (FLSA Acknowledgement) Bates No. D00070.

[35]    Ex. D (Costa Tr.) 25:8-26:18; 118:4-122:19.

[36]    Ex. D (Costa Tr.) 12:23-14:7; 23:4-24:2.

[37]    Ex. D (Costa Tr.) 25:8-25:23.

[38]    Ex. D (Costa Tr.) 16:19-17:3.

[39]    Ex. D (Costa Tr.) 12:23-15:16; 22:3-24:1; Ex. G (Scarfone Tr.) 189:6-190:11; Ex. E (Baruch Tr.) 14:12-15:18.

classifies all ASMs as exempt and denies them overtime pay.[40]

In the wake of *Damassia*, Duane Reade has taken only superficial steps to appear to comply with the overtime requirements of the FLSA and NYLL.  First, Duane Reade created additional trainings for all ASMs, purportedly to teach them managerial skills.  These trainings include a three-day meeting for all ASMs, which covers termination, performance management, and harassment[41] and a two-and-a-half-hour video on managing employees, which was implemented in September 2011.[42]  At the three-day meetings, Duane Reade compels all ASMs to sit through the same forty-five (45) minute lecture on "performance management."[43]  Human resources managers then review the uniform job description and require all ASMs to sign the same acknowledgement form of their exempt status.[44]  According to Duane Reade's internal correspondence, any ASM who did not sign the form would be "offer[ed] a different opportunity."[45]

Corporate human resources professionals also re-wrote the uniform ASM job description, adding managerial duties, *despite the fact that they knew that ASMs do not actually perform those duties*.[46]  An internal email between Duane Reade's in-house attorney[47] and human

---

[40]     Ex. D (Costa Tr.) 12:23-15:16; 22:3-23:3; Ex. E (Baruch Tr.) 14:12-15:18; Ex. G (Scarfone Tr.) 189:6-190:11; Ex. Q (Forde Tr.) 232:16-19; Ex. P (Bharat Tr.) 259:11-260:3; Ex. W (Islam Tr.) 261:3-7; Ex. V (Diop Tr.) 204:7-205:3; Ex. CC (Neuner Tr.) 35:10-36:6; Ex. JJ (Jacob Tr.) 317:8-318:25.

[41]     Ex. D (Costa Tr.) 73:14-76:8; 114:13-22; Ex. K (Garrison Tr.) 120:17-124:25.

[42]     Ex. D (Costa Tr.) 66:20-67:11; Ex. K (Garrison Tr.) 141:15-145:18.

[43]     Ex. K (Garrison Tr.) 120:17-124:25; Ex. NN (Exhibit 6 to the Deposition Transcript of Robyne Garrison, Bates No. D003659-60 ("Class Action Follow Up Plan")).

[44]     Ex D (Costa Tr.) 114:13-118:16; 123:2-124:20; Ex. NN (Class Action Follow-Up Plan) Bates No. D003659-3660; Ex. N (FLSA Acknowledgement, Bates No. D00070).

[45]     Ex. OO (Exhibit 4 to the Deposition Transcript of Suzanne Lazarchick, Bates No. D0049744-49749 ("Lazarchick Email Feb. 20, 2009") at "Suggested Proposal, 2.").

[46]     Ex. D (Costa Tr.) 25:15-26:14; 84:12-86:24; Ex. PP (Excerpts from Deposition Transcript of Suzanne Lazarchick, dated March 28, 2011 ("Lazarchick Tr.")) 90:8-92:12; Ex. OO (Lazarchick Email Feb. 20, 2009), Bates No. D049744-49746.

resources department highlights this scheme.[48]  According to the email, directors of store

operations reported that[49] ASMs *do not* perform managerial duties; for example, they do not

supervise or discipline hourly employees, hire or recommend applicants for hire, or promote or

recommend employees for promotion.[50]  Duane Reade's in-house counsel stated that those duties

"are needed in order for the [ASM] position to comply with the Duties portion of the FSLA [*sic*]

test."[51]  Duane Reade's human resources managers noted ASMs' lack of significant managerial

responsibility and even recognized that the company had exposure to liability if it continued to

classify them as exempt.[52]  Yet Duane Reade continues today to classify all ASMs as exempt

from the overtime provisions of the FLSA and NYLL.[53]  *Id.* at *5.

## ARGUMENT

### I.  <u>The NYLL Protects Plaintiffs and the Proposed Class.</u>

The NYLL requires employers to pay employees a premium rate of one and one-half

times their regular rate of pay for hours worked in excess of 40 in a workweek, unless the

employees are exempt.  NYLL §§ 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

Exemptions are narrowly construed in favor of employees.  *In re Novartis Wage & Hour Litig.*,

611 F.3d 141, 150 (2d Cir. 2010), *abrogated on other grounds by Christopher v. SmithKline*

*Beecham Corp.*, 132 S. Ct. 2156 (2012).  Duane Reade bears the burden of proving that ASMs

are exempt, *Novartis*, 611 F.3d at 150, and must prove each element of its exemption defenses.

---

[47]    Ex. PP (Lazarchick Tr.) 52:12-55.

[48]    Duane Reade waived the attorney-client privilege covering this internal email.  *See Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2012 WL 651536, at *7 (S.D.N.Y., Feb. 28, 2012).

[49]    Ex. PP (Lazarchick Tr.) 47:9-11; 55:8-14.

[50]    Ex. OO (Lazarchick Email Feb. 20, 2009, Bates No. D049744-49746).

[51]    *Id*.

[52]    Ex. G (Scarfone Tr.) 61:19-25; Ex. QQ (Exhibit 2 to the Deposition Transcript of Vincent Anthony Scarfone (Email from Robin Costa to Jim Scarfone, June 2, 2009.Bates No. D049760)).

[53]    Ex. D (Costa Tr.) 22:3-23:3.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The NYLL's overtime requirements and its exemptions are interpreted using the same standards as the FLSA.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (adopting FLSA exemptions into state law); *Novartis*, 611 F.3d at 157.

**II.**      **ASMs' Overtime Claims are Well-Suited for Adjudication on a Class Basis.**

**A.**      **Courts in this Circuit Routinely Certify NYLL Misclassification Cases.**

All ASMs share key characteristics that are relevant to Duane Reade's exemption defenses.[54]  In *Myers v. Hertz Inc.*, the Second Circuit held that class treatment of NYLL misclassification claims can be appropriate and efficient and specifically endorsed class certification where there is evidence of a uniform exemption decision and evidence that "tend[s] to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria."  624 F.3d 543, 549 (2d Cir. 2010).  As an example of a NYLL misclassification case that was properly certified, *Myers* cites *Damassia*, 250 F.R.D. at 159-60, *Myers*, 624 F.3d at 549-550, because ASM job duties were "largely consistent" across the class and the individual differences in job tasks would not be of the "magnitude" to "cause individual issues to predominate."  *Myers*, 624 F.3d at 549 (quoting *Damassia*, 250 F.R.D. at 160).

---

[54]      Duane Reade claims that all ASMs are "exempt executives and/or administrators."  (Ex. C (Ans.) Affirmative Defense 7 at 49.)  To qualify as an exempt executive, an employee must (1) earn $455 per week or more, (2) "customarily and regularly direct[] the work of two or more employees," (3) have management as his primary duty, and (4) have the authority to hire or fire employees, or have his recommendations as to hiring, firing or other change of status be given "particular weight."  29 C.F.R. § 541.100(a).  To qualify for the administrative exemption, an employee (1) must earn at least $455 per week; and (2) have her "primary duty" be (i) "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and (ii) "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(1)-(3).

The common evidence here, as in *Damassia*, warrants class certification.  All of the members of the proposed class were classified as exempt from the NYLL's overtime requirements, had the same title, and performed the same primary job duties.  *See* Statement of Facts, Part III *supra*.  Duane Reade maintains a uniform ASM job description, applies uniform policies and procedures to all ASMs, and uses uniform training materials for all ASMs.  *Id*. at Part II.

After *Myers*, district courts continued to certify NYLL misclassification classes.  In *Youngblood v. Family Dollar Stores, Inc.*, the court certified a NYLL class of store managers based on the defendant's uniform classification policy and "corporate policies delineating store managers' . . . uniform day-to-day job responsibilities."  No. 09 Civ. 3176, 2011 WL 4597555, at *2 (S.D.N.Y. Oct. 4, 2011) (internal quotation marks omitted).  Other district courts in the Second Circuit have also certified misclassification claims based on such evidence.  *See Cuevas v. Citizens Fin. Grp., Inc.*, No. 10 Civ. 5582, 2012 WL 1865564, at *3 (E.D.N.Y. May 22, 2012) (certifying class of assistant bank managers based on evidence of a uniform job description, training materials, and performance evaluations) (internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825, 2011 WL 2207586, at *9-12 (S.D.N.Y. June 2, 2011) (certifying class based on uniform classification policy and uniform job descriptions and testimony of plaintiffs regarding their job duties); *Han v. Sterling Nat'l Mortg. Co.*, No. 09 Civ. 5589, 2011 WL 4344235, at *4, *12 (E.D.N.Y. Sept. 14, 2011) (certifying class based on employer's uniform classification and common job description); *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 250 (S.D.N.Y. 2010) (certifying class based on the defendants' "centrally administered compensation policy").

As the Seventh Circuit recently held in certifying a misclassification case under the Illinois overtime law, "an individualized assessment of each [class member's] job duties is not relevant to a claim that an unlawful company-wide policy exists to deny [class members] overtime pay."  *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 909-10 (7th Cir. 2012).  Here, it is undisputed that it is Duane Reade's company-wide policy to deny ASMs overtime pay.  Whether it was unlawful or not is a perfect issue for class treatment.

### B.  A Factfinder Can Make the Same Type of Blanket Exemption Determination that Duane Reade Made.

Duane Reade uniformly classifies all ASMs as exempt from the overtime protections of the NYLL based on generalized information about the ASM role and without conducting an individualized inquiry of their job duties.  *See* Statement of Facts, Part IV *supra*.  It cannot now argue that the Court has to conduct an individualized inquiry to determine whether Duane Reade got it right.  In *Damassia*, the court certified the ASM class in part because Duane Reade classified ASMs as exempt on a class-wide basis without performing a "systematic re-evaluation of what duties the position entailed."  250 F.R.D. at 157.

### III.  Plaintiffs Meet All of the Rule 23 Requirements.

Plaintiffs seek to certify the following class under Rule 23 for violations of Article 19 of the NYLL: All persons employed by Duane Reade, Inc. as assistant store managers whom Duane Reade classified as exempt from the overtime requirements of the NYLL at any time between January 7, 2009 and the date of final judgment in this matter.

Courts give Rule 23 a "liberal rather than restrictive construction," and "adopt a standard of flexibility" when they apply it.  *Marisol A. by Forbes v. Guiliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal quotation marks omitted).  In order to certify a class, the Court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23

14

requirement has been met." *In re Initial Pub. Offering Sec. Lit.*, 471 F.3d 24, 41 (2d Cir. 2006).

In order to meet their burden, Plaintiffs must show that all of the requirements of Rule

23(a) are met and that one of the requirements of Rule 23(b) is met.  Fed. R. Civ. P. 23.  To

satisfy Rule 23(a), Plaintiffs must show that:

> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the
>         claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the
>         interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

Rule 23(b)(3), the provision that Plaintiffs move under here, is satisfied where "the court

finds that the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. Rule 23(b).

### A.    Plaintiffs Meet Each Rule 23(a) Requirement.

#### 1.    Numerosity.

Rule 23(a)(1) requires Plaintiffs to show that "the class is so numerous that joinder of all

members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40

members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Duane

Reade has identified 747 ASMs it employed during less than half of the class period.  (Brooks

Decl. ¶ 12.)

#### 2.    Questions of Law and Fact Are Common to the Class.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed.

R. Civ. P. 23(a)(2).  A single common question of law or fact will suffice.  *Marisol A.*, 126 F.3d

at 376; *accord Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  As Judge Lynch

noted in *Damassia*, commonality "does not mean that all issues must be identical as to each [class] member, but it does require that plaintiffs identify some unifying thread among the [class] members' claims that warrant[s] class treatment."  250 F.R.D. at 156.  Duane Reade's blanket classification of all ASMs as exempt, combined with evidence of its uniform corporate policies and practices governing the duties of ASMs, and uniform description, constitute the "unifying thread" uniting the proposed class and satisfying Rule 23(a)(2)'s commonality requirement.  *See Aponte*, 2011 WL 2207586, at *9 (commonality satisfied where "[a]ll of the proposed class members would rely on the same allegedly wrongful conduct of the defendant – defendant's policy of misclassifying its Benefits Consultants as exempt – and raise the same legal arguments in support of their claim – that the outside salesperson exemption or the administrative employee exemption to the overtime requirements do not apply").

Plaintiffs raise a number of questions of fact and law that will "generate common answers" for all class members.  *See Wal-Mart Stores*, 131 S. Ct. at 2551 ("[w]hat matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation") (internal quotation marks omitted); *Torres*, 2006 WL 2819730, at *12-14 (finding commonality based on similar common questions).

These common questions include, but are not limited to:

(a)     whether Defendants have failed and/or refused to pay Plaintiffs and the Class overtime pay for hours worked in excess of 40 hours per workweek within the meaning NYLL §§ 650 *et seq*., and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2;

(b)     the nature and extent of class-wide injury and the appropriate measure of damages for the Class;

16

(c)     whether Defendants have a policy of misclassifying ASMs as exempt from coverage of the overtime provisions of  the NYLL; and

(d)     whether Defendants' policy of misclassifying workers was done willfully and whether Defendants can prove that their unlawful policies were implemented in good faith. (Ex. B (Compl.) ¶ 41.)

Courts routinely find commonality based on the types of common questions at issue here. *See Cuevas*, 2012 WL 1865564, at *3 ("interpreting whether the duties described in" uniform job descriptions and other company policies "are consistent with either the 'executive' or 'administrative' exceptions . . . is a relevant question common to all class members") (internal quotation marks omitted); *Youngblood*, 2001 WL 4597555, at *2 (common questions including "whether [plaintiffs] are exempt from NYLL overtime requirements because they perform either executive or administrative duties" satisfy Rule 23(a)(2)) (internal quotation marks omitted); *Damassia*, 250 F.R.D. at 157 (common questions include "whether or not [plaintiffs'] duties fall into the 'executive' or 'administrative' exceptions, and whether [defendant] is entitled to an affirmative defense of 'good faith'"); *Han*, 2011 WL 4344235, at *4 ("whether an exemption applies to the NYLL's wage requirements is a legal issue that is common to the entire class"); *see also Myers*, 624 F.3d at 549 ("evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria" may satisfy Rule 23's higher predominance standard).

### 3.     Plaintiffs' Claims Are Typical of the Class Claims.

Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal citations omitted). "[M]inor variations in the fact

17

patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). The claims of the named plaintiffs and the class "only need to share the same essential characteristics, and need not be identical." *Damassia*, 250 F.R.D. at 158 (citation omitted). The typicality requirement is not "highly demanding." *Id.*

Plaintiff's claims arise from the same course of conduct as the claims of the class – Duane Reade's decision to classify all ASMs as exempt and its failure to pay them overtime compensation. *See Damassia*, 250 F.R.D. at 158 ("all class members' claims, including those of named plaintiffs, are based on the same course of events and legal theory, namely, that Duane Reade's decision to classify its ASMs as 'exempt' is inconsistent with the requirements of the NYLL"); *see also Cuevas*, 2012 WL 1865564, at *5 (typicality met where the plaintiff's "misclassification claims share[d] the same essential elements and legal arguments as those of the other putative class members"); *Youngblood*, 2011 WL 4597555, at *4 (typicality met because "the essential issue is whether [plaintiffs'] executive or administrative responsibilities, if any, were extensive enough to be considered their primary duty and this disputed issue occupies essentially the same degree of centrality for [Plaintiffs] as for the rest of the class") (internal quotation marks omitted); *Han*, 2011 WL 4344235, at *6; *Aponte*, 2011 WL 2207586, at *10.

### 4.   Plaintiffs Will Adequately Represent the Class.

Rule 23(a)(4) tests whether the class representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements is met. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a

party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)). Plaintiffs do not have interests antagonistic to the class. As Judge Lynch held regarding the ASM class representatives in 2008, "[t]he fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia,* 250 F.R.D. at 158. Moreover, these Plaintiffs have demonstrated a commitment to the class by assisting with the preparation of the complaints, sitting for depositions, answering interrogatories, and producing documents. Brooks Decl. ¶ 18.

Plaintiffs also selected counsel who are "qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Courts have routinely found that Outten & Golden, LLP ("O&G") "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and in class action law." *Westerfield v. Wash. Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084, at *3 (E.D.N.Y. June 26, 2009).[55] *See also Stillman v. Staples, Inc.*, No. 07 Civ. 849 (D.N.J. ) (appointing attorneys from Klafter Olsen & Lesser ("Klafter"), and Gottlieb and Associates ("Gottlieb") as class counsel); *Herring v. Hewitt Inc.*, No. 06 Civ. 267 (D.N.J.) (same). *See also* Declaration of Seth Lesser in Support of Mot.

---

[55]     *See also Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599773, at *2 (S.D.N.Y. June 3, 2011); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011); *deMunecas v. Bold Food LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *2-3 (S.D.N.Y. Aug. 23, 2010); *Torres v. Gristede's Operating Corp.,* Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937, at *1 (S.D.N.Y. June 1, 2010); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010); *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010); *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 WL 2025106, at *7-8 (E.D.N.Y. Jan. 20, 2010); *Damassia,* 250 F.R.D. at 158.

for Class Cert. ("Lesser Decl."), Ex. A, ¶ 4; Declaration of Jeffrey Gottlieb in Support of Mot.

for Class Cert. ("Gottlieb Decl."), Ex. A, ¶ 7.

### B.    Plaintiffs Meet the Rule 23(b)(3) Requirements.

#### 1.    Common Questions Predominate.

Rule 23(b)(3) requires "questions of law or fact common to class members [to]

predominate over any questions affecting only individual class members . . . ." Fed. R. Civ. P.

23(b)(3).  A common question predominates when "resolution of some of the legal or factual

questions that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and if these particular issues are more substantial than the issues

subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.

2002).

In an overtime exemption case, the predominance requirement is met if the plaintiffs

present evidence "tending to show that the plaintiffs' jobs were similar in ways material to the

establishment of the exemption criteria." *Myers*, 624 F.3d at 549.  Here, all members of the class

are unified by common facts about their jobs – all have the same duties and title, and Duane

Reade classifies them all as exempt. *See* Statement of Facts, Parts III & IV *supra*.  As Judge

Lynch found in 2008, this evidence shows that ASMs' job duties were "largely consistent" with

respect to the exemption criteria at issue and is sufficient to satisfy the predominance

requirement. *Damassia*, 250 F.R.D. at 160; *see also Youngblood*, 2011 WL 4597555, at *5

(finding predominance met "[w]here . . . there is evidence that the duties of the job are largely

defined by comprehensive corporate procedures and policies . . . .") (quoting *Damassia*, 250

F.R.D. at 160-61); *Han*, 2011 WL 4344235, at *9 ("[S]o long as plaintiff can demonstrate that

the duties . . . were largely similar, the predominance inquiry is satisfied in favor of class

certification."). Moreover, they are also unified by a common legal theory – that Duane Reade's class-wide exempt classification violates the NYLL. *See* Statement of Facts, Part III *supra*.

Any individualized issues that Duane Reade cited in 2008 were not of "such a magnitude as to cause individual issues to predominate." *Damassia*, 250 F.R.D. at 160. Any differences it may cite now did not influence its decision to continue to classify all ASMs as exempt following the settlement of that suit. *See Youngblood*, 2011 WL 4597555, at *5 (giving little weight to differences among class members cited by the defendant where such differences were not considered in classifying the class members as exempt); *see also Myers*, 624 F.3d at 549 ("[A] blanket [classification] policy … suggests the employer believes some degree of homogeneity exists among the employees, and is thus in a general way relevant to the [predominance] inquiry . . . .") (internal quotation marks omitted); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (finding that the issue of whether employees were supposed to be paid overtime was "about the most perfect question[] for class treatment"); *Alba v. Papa John's USA, Inc.*, No. 05 Civ. 7487, 2007 WL 953849, at *13 (C.D. Cal. Feb. 7, 2007) ("[T]he questions whether store managers are properly classified as 'exempt' and whether the standardized policies and practices throughout Defendants' stores prevent store managers from meeting the definition of 'exempt' are common questions that are more appropriately addressed on a class-wide basis."); *Krzesniak v. Cendant Corp.*, No. 05 Civ. 05156, 2007 WL 1795703, at *13-18 (N.D. Cal. June 20, 2007) (finding predominance based on legal questions of whether employer properly classified all managers as exempt); *Tierno v. Rite Aid Corp.*, No. 05 Civ. 02520, 2006 WL 2535056, at *9 (N.D. Cal. Aug. 31, 2006) (finding predominance based on treatment of all store managers as "one homogenous group" and because "significant aspects" of the case could be resolved on a classwide bases"); *Chun-Hoon v. McKee Foods Corp.*, No. 05 Civ. 620, 2006

21

WL 3093764, at *2 (N.D. Cal. Oct. 31, 2006) (finding that "the common questions concern whether defendant misclassified its distributors as independent contractors instead of employees, and these questions predominate over individual ones"); *Torres,* 2006 WL 2819730, at *16 (finding that plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and this issue "predominates over any individual calculations of overtime wages"); *Jankowski v. Castaldi*, No. 01 Civ. 0164, 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) ("The common question of Defendants' alleged failure to pay overtime wages predominates, and this requirement is therefore satisfied."); *Whiteway v. FedEx Kinko's Office & Print Services, Inc.*, No. 05 Civ. 2320, 2006 WL 2642528, at *10 (N.D. Cal. Sept. 14, 2006)  (finding that question of overtime exemption of class of retail-chain managers predominated and that "[t]he Court can more efficiently answer the question of whether Defendant's exemption of all CMs is correct through a class action than through case-by-case adjudication."); *Goldman v. Radioshack Corp.*, No. 03 Civ. 0032, 2005 WL 1124172, at *4 (E.D. Pa. May 9, 2005) (finding that whether "store managers were wrongfully classified as exempt and denied overtime wages" was a predominate legal issue); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) *abrogated by Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) and *aff'd*, 623 F.3d 743 (9th Cir. 2010) *cert. granted, judgment vacated*, 132 S. Ct. 74, 181 L. Ed. 2d 1 (U.S. 2011)  (finding predominance where plaintiffs allege all class members were classified as exempt from overtime pursuant to defendant's policy); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 158 (S.D.N.Y. 2002) (the predominance requirement is satisfied where "[p]laintiffs' claims are based on the alleged across-the-board deprivations of overtime wages . . . .").

### 2.        A Class Action is the Superior Mechanism.

Rule 23(b)(3) requires the Court to determine "that a class action is superior to other

available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P.

23(b)(3).  In determining whether superiority is met, the Court may consider the following non-

exclusive list of relevant factors:

> (A) the interest of the members of the class in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature of any
> litigation concerning the controversy already commenced by or against class
> members; (C) the desirability or undesirability of concentrating the litigation of
> the claims in the particular forum; and (D) the difficulties likely to be
> encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiffs satisfy each of the four factors.  First, class members' interests would not be

served by individually controlling the prosecution of the action because most lack the resources

to even "contemplate proceeding with this litigation in any context other than through their

participation in a class action, given the expense and burden that such litigation would entail."  *In

re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 304 (S.D.N.Y. 2003).  "[A] class action will save

an enormous amount in litigation costs for all parties and allow them to more efficiently

prosecute their claims and defenses."  *Han*, 2011 WL 4344235, at *11; *Aponte*, 2011 WL

2207586, at *11 ("Litigating each claim individually would likely result in wasteful and

repetitive lawsuits, thus ineffectively utilizing the resources of the judiciary and the parties.").

Second, Plaintiffs are unaware of any litigation begun by members of the proposed class

other than this case.  Third, concentrating the litigation in this forum is desirable because Duane

Reade's headquarters are in this District and the class members work and/or reside there.  Fourth,

this case is unlikely to present manageability problems because it is of a manageable size and all

of its members worked in New York.  *See Torres*, 2006 WL 2819730, at *16 (finding "little

23

reason to expect" manageability problems for class action of New York City grocery workers);

*see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) ("The determination

of whether a particular action is manageable is peculiarly within the discretion of the district

court.") (internal quotation marks omitted).

**IV.     The Court Should Appoint Plaintiffs' Lawyers as Class Counsel.**

The Court should appoint O&G, Klafter, and Gottlieb ("Plaintiffs' Counsel") as Class

Counsel because they satisfy the requirements of Rule 23(g).  Rule 23(g) requires the Court to

consider:

> (i) the work counsel has done in identifying or investigating potential claims in
> the action; (ii) counsel's experience in handling class actions, other complex
> litigation, and types of claims asserted in the action; (iii) counsel's knowledge of
> the applicable law; and (iv) the resources counsel will commit to representing the
> class.

Fed. R. Civ. P. 23(g)(1)(A).

Through extensive discovery into the class and collective allegations as well as the filing

of motion for collective action notice, Plaintiffs' Counsel have demonstrated the extent to which

they have performed substantial work investigating the ASMs' claims and vigorously

prosecuting them.  Courts have recognized O&G's "extensive experience prosecuting and

settling nationwide wage and hour class and collective actions" and found them to be "well-

versed in wage and hour and class action law."  *Dorn v. Eddington Sec., Inc*., No. 08 Civ. 10271,

2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011); *Westerfield*, 2009 WL 6490084, at *3; *see*

*also* Brooks Decl. ¶ 22.  In turn, the Klafter attorneys in this case have been appointed class

counsel in numerous FLSA and overtime cases, both litigated and settled, including, as here

relevant, *Damassia*, 250 F.R.D. at 168; *see also Youngblood*, 2011 WL 4597555, at *4; *Caissie*

*v. BJ's Wholesale Club*, No. 08 Civ. 30220 (D. Mass.); *Nash, et al. v. CVS Caremark Corp*., No.

09 Civ. 079 (D.R.I.); *Herring v. Hewitt Inc*., No. 3:06 Civ. 267 (D.N.J.) (appointing Klafter and Gottlieb attorneys as class counsel); *Stillman v. Staples, Inc*., No. 07 Civ. 849 (D.N.J.) (same); *see also* Lesser Decl., Ex. A, ¶ 4; Gottlieb Decl., Ex. A, ¶ 4.

## CONCLUSION

Plaintiffs have met all of the elements of Rule 23 and shown that Duane Reade has a company-wide policy of misclassifying all ASMs as exempt executives based on their titles alone.  Accordingly, Plaintiffs respectfully request that this Court certify the proposed class pursuant to Fed. R. Civ. P. 23(a), designate the named Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel.

Dated:          August 31, 2012
                New York, New York

                                        Respectfully submitted,

                                        **OUTTEN & GOLDEN LLP**
                                        By:

                                        /s/ Adam T. Klein
                                            Adam T. Klein

                                        **OUTTEN & GOLDEN LLP**
                                        Adam T. Klein
                                        Molly A. Brooks
                                        Sandra E. Pullman
                                        3 Park Avenue, 29th Floor
                                        New York, New York 10016
                                        Telephone:  (212) 245-1000

                                        Seth R. Lesser
                                        Fran L. Rudich
                                        Michael J. Palitz
                                        Mark W. Gaffney
                                        **Klafter, Olsen & Lesser LLP**
                                        Two International Drive, Suite 350
                                        Rye Brook, New York 10573
                                        Telephone: (914) 934-9200

25

Jeffrey Gottlieb
Dana Gottlieb
**Gottlieb & Associates**
150 East 18th Street, Suite PHR
New York, New York 10003
Telephone: (212) 228-9795

**Attorneys for Plaintiffs and the Putative
Collective Class**