**OUTTEN & GOLDEN LLP**
Adam T. Klein
Molly A. Brooks
Sandra E. Pullman
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**GOTTLIEB & ASSOCIATES**
Jeffrey Gottlieb
Dana Gottlieb
150  East 18th Street, Suite PHR
New York, New York 10003
Telephone: (212) 228-9795

**KLAFTER OLSEN & LESSER**
Seth R. Lesser
Fran L. Rudich
Michael J. Palitz
Mark W. Gaffney
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MANI JACOB and LESLEENA MARS, individually and on behalf all others similarly situated,<br><br>                                        Plaintiffs,<br><br>     v.<br><br>DUANE READE, INC. and DUANE READE HOLDINGS, INC.,<br><br>                                        Defendants. | **11 Civ. 0160 (JPO) (JCF)** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

i

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| ARGUMENT | | | 1 |
| I. | Plaintiffs Establish Commonality | | 1 |
| II. | Plaintiffs Establish Typicality | | 2 |
| III. | Plaintiffs Establish Predominance | | 4 |
| | A. | Only ASMs' Primary Duties are Relevant | 5 |
| | B. | Duane Reade Mischaracterizes and Exaggerates the Evidence Regarding ASMs' Duties | 5 |
| | C. | Duane Reade's "Individualized Analysis" Argument Is Belied By the Uniform Corporate Policies and Procedures Applying to All ASMs | 8 |
| IV. | Plaintiffs Establish Superiority | | 9 |
| V. | Duane Reade's Alleged "Overhaul" of the ASM Position Did Not Alter ASMs' Primary Duties or Their Ability to Hire and Fire | | 9 |
| CONCLUSION | | | 10 |

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Creely v. HCR Manorcare, Inc.*,
　789 F. Supp. 2d 819 (N.D. Ohio 2011) ................................................................................7

*Cuevas v. Citizens Fin. Grp., Inc.*,
　No. 10 Civ. 5582, 2012 WL 1865564 (E.D.N.Y. May 22, 2012) ......................................8, 9

*Damassia v. Duane Reade, Inc.*,
　250 F.R.D. 152 (S.D.N.Y. 2008) .................................................................................1, 2, 6

*Han v. Sterling Nat. Mortg. Co., Inc.*,
　No. 09 Civ. 5589, 2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011) ..........................................4

*Myers v. Hertz Corp.*,
　624 F.3d 537 (2d Cir. 2010) ........................................................................................5, 8, 9

*Robidoux v. Celani*,
　987 F.2d 931 (2d Cit. 1993) ..................................................................................................4

*Wal-Mart, Inc. v. Dukes*,
　131 S. Ct. 2541 (2011) ...........................................................................................................1

*White v. W. Beef Props., Inc.*,
　No. 07 Civ. 2345, 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011) ............................................7

*Youngblood v. Family Dollar Stores, Inc.*,
　No. 09 Civ. 3176, 2011 WL 4597555 (S.D.N.Y. Oct. 11, 2011) ................................... passim

**STATUTES**

20 C.F.R. § 541.100(a) ..................................................................................................................5

Duane Reade wants to have it both ways. After classifying all assistant store managers ("ASMs") as exempt based on uniform corporate policies delineating ASMs' standardized job responsibilities, Duane Reade now claims that the Court must conduct an individualized inquiry to determine whether the ASMs were properly classified. This argument failed in *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008), and it fails here.

The record is more than sufficient to support class certification. As Duane Reade's own witnesses attest, all ASMs function within a standardized framework and have virtually identical primary duties. To the extent that Duane Reade identifies individualized variations in some ASMs' tasks, those are immaterial to a determination on the merits and have no impact on class certification. This is precisely the type of case that is suitable for class treatment.

## ARGUMENT

With no credible Rule 23 defense, Duane Reade repeatedly cites *Wal-Mart, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). *Wal-Mart* is no help because, as this court recognized in another New York retail manager misclassification case, "[u]nlike the claims in *Wal-Mart*, Plaintiffs' NYLL claims 'do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights.'" *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 11, 2011) (citations omitted).

### I. Plaintiffs Establish Commonality

Duane Reade does not challenge numerosity or adequacy. In challenging commonality it ignores the many misclassification cases finding commonality where, as here, Defendants make a class-wide exempt classification, maintain policies and procedures that both standardize plaintiffs' job duties and uniformly constrain their exercise of independent judgment, and uses a

single job description.  *See* Pls' Br. at 17.  These policies and procedures are "unquestionably probative of [ASMs'] actual duties," and "create common questions as to whether [ASMs] are properly classified as ... exempt."  *Youngblood*, 2011 WL 4597555, at *4 (citations omitted).

Contrary to Defendants' contention, Plaintiffs do not argue that Defendants' policies and job description do not apply to them.  Defs' Br. at 16.  Duane Reade has one job description for *all* ASMs (Pls' Br. at 9), just as it has uniform corporate policies and procedures for *all* ASMs (Pls' Br. at 5-7) and characterized *all* ASMs as exempt in one fell swoop (Pls' Br. at 9).  In an effort to superficially comply with the FLSA following *Damassia*, Duane Reade re-wrote its uniform ASM job description to *add* managerial duties, even though it knew ASMs do not actually perform them.  Pls' Br. at 9-11.  Plaintiffs and Duane Reade may disagree on how to characterize ASMs' job duties (exempt or nonexempt) and how to assess their relative importance (primary duties or not), but these are common questions proper for class treatment.

## II.  Plaintiffs Establish Typicality.

Typicality is easily satisfied here because "all class members' claims, including those of named plaintiffs, are based on the same course of events and legal theory, namely, that Duane Reade's decision to classify its ASMs as 'exempt' is inconsistent with the requirements of the NYLL."  *Damassia*, 250 F.R.D. at 158.  Facing Plaintiffs' strong showing (Pls' Br. 5-9), as shown below, Duane Reade selects snippets of the named Plaintiffs' testimony, often taken out of context and misrepresenting the actual testimony. *See* Defs' Br. at 5-6.  This tactic backfires.  In reality, Mr. Jacob, like Ms. Mars and all other ASMs, was a "manager" in name only.[1]  Duane Reade uniformly constrained ASMs' ability to exercise discretion and independent judgment. *See* Pls' Br. at 8.  Mr. Jacob's experience was no different.

---

[1] Any difference in Plaintiff Mani Jacob's experience is explained by the fact that he was employed as a store manager for approximately 17 years before being demoted in 2007 to the ASM role at issue here.  Ex. RR (Jacob Dep.) 13:15-14:5.  All exhibits are attached to the Declaration of Molly A. Brooks.

*Supervising store employees*.  Duane Reade selects a quotation from Mr. Jacob's testimony regarding supervising employees (Defs' Br. at 5), but omits testimony that he had to consult with his store manager or district manager regarding this so-called supervision.[2]

*Managing the store in the absence of the store manager*.  Duane Reade cherry-picks a statement from Mr. Jacob that he is "responsible" for occurrences in the store when the store manager is absent.  But Duane Reade omits the fact that the store manager gave Mr. Jacob detailed instructions for what to do in his absence and called Mr. Jacob to check on how things were going.[3]  In addition, Mr. Jacob called the store manager in his absence "if something happened in the store" such as store employees arguing or not showing up for work.[4]

*Recommending a new hire*.  Mr. Jacob answered "yes" to the questions of whether he had recommended people to be hired and whether they were in fact hired.  The "recommendation," however, only entailed referring the applicant to corporate headquarters.[5]  Mr. Jacob clarified that corporate headquarters never talked with him about a job applicant, and he never attended a single interview.[6]  Further, Mr. Jacob testified that, in his experience, hiring decisions were not made in the store, and he never made the decision to hire anyone.[7]

*Recommending termination*.  Duane Reade's citations to support its claim that Mr. Jacob recommended a termination only shows that a loss prevention person spoke with him, the shift leader, and "other employees" about the employee.  Defs' Br. at 6.  Mr. Jacob explicitly testified that he never made a decision to fire an employee: "only the HR people can fire the people."[8]

---

[2]   Ex. RR (Jacob Tr.) 270:16-271:17.
[3]   Ex. RR (Jacob Tr.) 308:13-310:4.
[4]   Ex. RR (Jacob Tr.) 310:5-13.
[5]   Ex. RR (Jacob Tr.) 116:20-117:13.
[6]   Ex. RR (Jacob Tr.) 327:14-14.
[7]   Ex. RR (Jacob Tr.) 311:6-12.
[8]   Ex. RR (Jacob Tr.)  311:13-21.

3

*Working with the payroll budget*. Mr. Jacob testified that a store manager "sometimes" asked him to work with a payroll budget. Defs' Br. at 6. But he also explained that he had no authority with respect the payroll budget, which is set by the district manager.[9]

*Preparing work schedules*. Mr. Jacob testified that he prepared work schedules in one store, but he had to get approval from the store manager before finalizing the schedule.[10]

*Training new associates*. Mr. Jacob had occasion to train new associates, but it was not one of his primary duties and is therefore irrelevant to this inquiry. *See* Section III.A., *infra*. Mr. Jacob testified, as did the other ASMs, that his primary job duties included manual labor and customer-service work.[11]

Even assuming differences in ASMs' experiences, "minor variations in . . . fact patterns," do not defeat typicality when, as here, "the same unlawful conduct" affects the named Plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *Youngblood*, 2011 WL 4597555, at *5 ("[w]hile Defendants point to some differences in the job duties of some Family Dollar store managers, most of these differences are immaterial to the exemption issues.").

### III.   Plaintiffs Establish Predominance.

In attempting to show that individual issues will predominate, Duane Reade identifies distinctions without legal significance. *See* Defs' Br. at 18-24. There is no evidence that these distinctions "are of such a magnitude as to cause individual issues to predominate." *Youngblood*, 2011 WL 4597555 at *5 (quotation omitted). Because plaintiffs' primary duties are "largely similar, the predominance inquiry is satisfied in favor of class certification." *Han v. Sterling Nat. Mortg. Co., Inc.*, No. 09 Civ. 5589, 2011 WL 4344235, at *9 (E.D.N.Y. Sept. 14, 2011).

---

[9]   Ex. RR (Jacob Tr.) 310:14-21.
[10]  Ex. RR (Jacob Tr.) 313:20-314:25.
[11]  Ex. RR (Jacob Tr.) 304:23-305:23.

### A. Only ASMs' Primary Duties are Relevant.

To determine whether an employer meets its burden to prove that workers are exempt, the only duties that matter are "primary duties." 20 C.F.R. § 541.100(a). Duane Reade does not refute the evidence that all ASMs spent the majority of their time performing manual labor and customer-service work. Pls.' Br. at 7-9. Instead, it argues that various ancillary tasks ASMs performed defeat predominance. But as the Court of Appeals for the Second Circuit recently noted, the relevant inquiry entails "evidence tending to show that the plaintiffs' jobs were similar in ways *material to the establishment of the [legally relevant] criteria*." *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) (emphasis added). Even if all of Defendants' identified variations are true, they would not defeat class certification because the issues to which they relate are not crucial to Plaintiffs' case. With respect to the questions that are actually relevant to Plaintiffs' claims, the testimony is almost uniformly consistent across the class. Pls.' Br. at 7-9.

### B. Duane Reade Mischaracterizes and Exaggerates the Evidence Regarding ASMs' Duties.

Duane Reade cannot – and does not – dispute the testimony of their own witnesses and opt-in plaintiffs that ASMs' primary job duties are virtually identical. Pls' Br. at 7-9. Instead, Duane Reade attempts to refute the evident predominance of ASMs' common questions by pointing to purported differences in ASMs' duties. These arguments fail, one after another.

First, Duane Reade again relies on its comparison of the named Plaintiffs' testimony. As discussed above, a complete reading of the testimony demonstrates the similarity, not the disparity, of their experiences, and supports predominance. *See* Section II, *supra*.

Second, Duane Reade argues that some ASMs are "Hiring ASMs." Defs' Br. at 19. Not only are just a handful of over 700 putative class members hiring managers (Pls' Br. at 8), but there is no evidence that any ASM's primary duties included hiring. The evidence again

5

demonstrates that ASMs' duties are consistent across the class. *See Damassia*, 250 F.R.D. at 160 ("It is not possible (or necessary) at this stage to decide precisely how the mix of responsibilities is apportioned, but it appears from the depositions to be largely consistent across [ASMs].").

Third, Duane Reade argues that some ASMs did not do certain tasks, such as working with the Plan-o-Gram and packing out. Defs' Br. at 19-20. But each of these ASMs' testimony shows that their primary job duties and responsibilities did not differ from other ASMs.[12]

Fourth, Duane Reade argues that ASMs' job duties differ among stores and shifts and with store managers. This argument failed in *Damassia*, and it fails here. There, the Court rejected Duane Reade's argument that these differences affect class certification, noting that Duane Reade had conceded that its business practices are the same among its stores. *Damassia*, 250 F.R.D. at 159. Duane Reade presents no evidence that its business practices for ASMs vary from store to store or shift to shift. In fact, the opposite is true: Duane Reade's maintains uniform, companywide policies and procedures that apply to all ASMs and standardize their duties. Pls' Br. at 5-8 (citing evidence including corporate admissions). Even the ASMs whose testimony Duane Reade cites uniformly testified they spent the majority of their time performing manual labor and customer-service work, regardless of store or shift or store manager.[13]

Fifth, Duane Reade lists ASMs whose testimony differed on whether they were involved in supervision or management. But all of the ASMs Duane Reade identified as agreeing to some involvement in supervision or management who were deposed testified that the majority of their

---

[12]   Ex. RR (Jacob Tr.) 328:21-329:25; Ex. SS (Farid Tr.) 159:23-160:15; Ex. TT (Gaynor Tr.) 158:18-159:4**;** Ex. UU (Allen Tr.) 113:8-115:9.
[13]   Ex. VV (Mehta Tr.) 57:2-5; Ex. WW (Lewis Tr.) 97:19-100:21; Ex. XX (Gerald Tr.) 72:15-20, 170:20-171:4; Ex. YY (Echevarria Tr.) 30:4-7; Ex. ZZ (Mendez Tr.) 232:2-18; Ex. AAA (Saddik Tr.) 275:16-276:20; Ex. BBB (Ifill Tr.) 169:4-9; Ex. CCC (Washington Tr.) 23:19:-25:24, 124:9-125:1, 164:14-22.

work is spent on manual labor and customer-service work.[14] Duane Reade's only other support for this proposition consists of self-serving declarations it submitted in opposition to this motion. Courts dismiss such evidence because these declarations have "glaring reliability concerns" and are "inherently coercive" because they were obtained from current employees by an employer's attorneys. *See Creely v. HCR Manorcare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011).

Duane Reade stresses some minor differences, but cannot escape the reality that ASMs' jobs are materially similar, and in ways relevant to their claims. As the case it cites articulated:

> Rule 23 does not impose upon plaintiffs the impossible task of showing that all class members have identical job responsibilities. Rather certification is appropriate when the evidence shows that "the job duties of putative class members were *'largely consistent'* " or when the individual employees' "deposition testimony relating to their specific job duties is *generalizable*" to others in the proposed class.

*White v. W. Beef Props., Inc.*, No. 07 Civ. 2345, 2011 WL 6140512, at *3 (E.D.N.Y. Dec. 9, 2011). Indeed, in *White*, the Court found that the record was lacking and failed to show similarities in jobs across nine different departments. There, the plaintiffs presented only three declarations and none of the substantial evidence presented here, such as comprehensive and uniform corporate policies delineating job duties, a common exemption policy, and testimony from an array of other putative class members showing similar job duties. Pls' Br. at 3-9; *see also* Ex. VVV (Pls. Br in Support of Class Certification in *White v. Western Beef, Inc*.). Given the record proving the similarity in class member's primary job duties, there is no question that they are "largely consistent" so that common questions predominate.

---

[14] Ex. RR (Jacob Tr.) 304:23-305:23; Ex. DDD (Diop Tr.) 173:16-174:10, 201:7-202:8; Ex. AAA (Saddik Tr.) 275:16-276:20, 276:21-277:14; Ex. EEE (DeMarco Tr.) 181:22-183:4, 119:11-120:17; Ex. FFF (Faruk Tr.) 68:12-21; Ex. GGG (Bharat Tr.) 254:2-255:20; Ex. VV (Mehta Tr.) 19:14-24; Ex. HHH (Forde Tr.) 121:20-122:5; 232:20-233:6; Ex. CCC (Washington Tr.) 23:19-25:24; 124:9-125:1; 164:14-22; Ex. III (Vuchetich Tr.) 25:23-28:9; Ex. JJJ (Bastien Tr.) 55:7-57:11; 75:5-24; Ex. KKK (Neuner Tr.) 88:21-89:15; Ex. XX (Gerald Tr.) 72:15-73:5, 158:14-160:15, 171:24-172:6; Ex. LLL (Crooks Tr.) 41:12-42:22; Ex. MMM (Zurwaski Tr.) 55:25-56:22, 107:9-22; Ex. NNN (Ban Tr.) 141: 16-21, 9:6-22; Ex. BBB (Ifill Tr.) 169:4-9; Ex. OOO (Jean-Baptiste Tr.) 141:22 – 142:2.

### C. Duane Reade's "Individualized Analysis" Argument Is Belied By the Uniform Corporate Policies and Procedures Applying to All ASMs.

"Where, as here, there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities." *Youngblood*, 2011 WL 4597555 at *5 (quoting *Damassia,* 250 F.R.D. at 160-61 (citations omitted)). Missing the mark, Duane Reade argues that "Courts decline to grant class certification based upon job descriptions, policies and procedures that do not demonstrate an unlawful policy," attempting to argue the merits of its defenses. Defs' Br. at 23. The job description, training, and policies and procedures are evidence of Duane Reade's centralized control of ASMs' job duties and the job – not of the duties themselves. If Duane Reade was correct, any employer could draft a job description containing all exempt job duties and escape liability even if the employees did not perform those duties. Whether or not an unlawful exemption policy exists here is a question common to all ASMs.

Contrary to Duane Reade's contentions, Plaintiffs do not argue that Rule 23 is satisfied by just Duane Reade's uniform classification of all ASMs as exempt or by its uniform job description, ASM training, and policies and procedures standardizing ASM job duties. Defs' Br. at 22-23. The uniform exemption classification, however, "is certainly relevant to the court's decision and weighs in favor of class certification." *Cuevas v. Citizens Fin. Grp., Inc.*, No. 10 Civ. 5582, 2012 WL 1865564, at *3 (E.D.N.Y. May 22, 2012) (citations omitted). The classification is evidence that any differences in the ASM position are immaterial to the determination of whether the job is exempt. *See Youngblood*, 2011 WL 4597555 at *5 (citing *Damassia,* 250 F.R.D. at 159; *Myers*, 624 F.3d at 549 ("[S]uch a [blanket] policy suggests the employer believes some degree of homogeneity exists among the employees, and is thus in a

8

general way relevant to the [predominance] inquiry . . . ." (internal quotation marks omitted)). Likewise, uniform ASM training, and policies and procedures standardizing the ASM job duties further demonstrate that common issues predominate and the proposed class is "sufficiently cohesive" to warrant class certification. *Cuevas*, 2012 WL 1865564, at *3 (citations omitted).

**IV.     Plaintiffs Establish Superiority.**

In response to Plaintiffs' strong showing on each of the factors relevant to superiority, *see* Pls' Br. at 23-24, Duane Reade argues that adjudicating this matter requires mini-trials for each class member. Defs' Br. at 25.[15]  This argument has no merit and disregards the evidence supporting a class-wide determination of liability. Pls' Br. at 23-24. Absent proof of "dramatic variations among class members' job duties that would render a class action unwieldy," *Cuevas*, 2012 WL 1865564, at *4, a class action is superior. The case will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Myers*, 624 F.3d at 547 (internal quotation marks and citation omitted).

**V.     Duane Reade's Alleged "Overhaul" of the ASM Position Did Not Alter ASMs' Primary Duties or Their Ability to Hire and Fire.**

Duane Reade claims that it has changed the ASM position since *Damassia* through: (1) additional training; (2) conducting hiring at the store level; (3) creating the shift leader position; and (4) remodeling stores. Defs' Br. at 9-13. But, even more important than the fact that these uniform changes were for *all* ASMs, both ASMs and Duane Reade's own corporate executive alike testified that the primary job duties of ASMs have *not* changed since 2007.[16]

---

[15]     Duane Reade's counsel, the Littler Mendelson, P.C. firm, made the same argument in the *Youngblood* case, and this Court rejected it. *Youngblood*, 2011 WL 4597555 at *6 ("the Court concludes that a class action is superior to Defendants' suggestion of a separate trial for each of the more than 1,500 potential class members.") (internal citations and quotations omitted).
[16]     Pls' Br. at 9-10, ftnt 40; Ex. PPP (Baruch Tr.) 15:5-18.

9

Duane Reade's class-wide training on managerial topics did not change ASMs' duties. ASMs are still have no meaningful involvement in the hiring process[17] or make hiring decisions,[18] and still do not have authority to fire.[19] The shift leader position also did not alter the ASM position; in fact, they perform many of the same duties as ASMs.[20] Finally, "New Look" stores affect ASMs' daily duties only marginally,[21] and the "Look Boutique" cosmetic section, which is a separate entity with its own staff, has no affect on ASMs' duties at all.[22]

## CONCLUSION

Plaintiffs respectfully request that this Court certify the proposed class pursuant to Fed. R. Civ. P. 23(a), designate the named Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel.

---

[17] Ex. XX (Gerald Tr.) 165:4-23; Ex. QQQ (Howland Tr.) 66:3-13; Ex. CCC (Washington Tr.) 89:15-17; Ex. SSS (Saleem Tr.) 87:3-10; 186:7-13; Ex. BBB (Ifill Tr.) 34:20-22; Ex. TT (Gaynor Tr.) 141:14-22; Ex. RRR (Cedeno Tr.) 104:22-105:4; ASMs do not review resumes (Ex. QQQ (Howland Tr.) 79:21-80:1; Ex. CCC (Washington Tr.) 89:9-11; Ex. SSS (Saleem Tr.) 56:12-22; Ex. TT (Gaynor Tr.) 96:8-15; Ex. RRR (Cedeno Tr.) 85:13-15; Ex. NNN (Ban Tr.) 207:17-18; ASMs do not conduct interviews (Ex. CCC (Washington Tr.) 89:6-7; Ex. RRR (Cedeno Tr.) 85:16-18; 104: 22-105:4; Ex. SSS (Saleem Tr.) 55:23-56:11, 58:20-14, 142:14-15; Ex. TT (Gaynor Tr.) 96:8-15, 141:2-13; Ex. NNN (Ban Tr.) 206:7-207:2, 208:1-6; Ex. QQQ (Howland Tr.) 80:7-9; Ex. BBB (Ifill Tr.) 51:11-23;62: 23-63: 7; ASMs do not have access to VirtualEdge, the system that stores applications for hiring managers to review (Ex. CCC (Washington Tr.) 166: 16-21; Ex. XX (Gerald Tr.) 165:17-23; Ex. BBB (Ifill Tr.) 170:16-22).

[18] Ex. CCC (Washington Tr.) 87:23-90:9; Ex. BBB (Ifill Tr.) 62:23- 63:7; Ex. RRR (Cedeno Tr.) 104: 22-105:4; Ex. TT (Gaynor Tr.) 95:23-96:11; Ex. NNN (Ban Tr.) 207:21-14.

[19] Ex. QQQ (Howland Tr.) 79:10-20, 80:10-13; Ex. TT (Gaynor Tr.) 142:23-143:11; Ex. BBB (Ifill Tr.) 169:13-24; Ex. RRR (Cedeno Tr.) 86:17-20.

[20] Ex. XX (Gerald Tr.) 171:8-13; Ex. QQQ (Howland Tr.) 157:11-19; Ex. CCC (Washington Tr.) 166:5-15; Ifill Tr. 90:1-91:10; Ex. SSS (Saleem Tr.) 31:13-32:3; Ex. TT (Gaynor Tr.) 102:5-15, 183:23-184:24; Ex. NNN (Ban Tr.) 201:22-203:22.

[21] Ex. CCC (Washington Dep). 167:10-17; Ex. QQQ (Howland Tr.) 51:6-8; Ex. BBB (Ifill Tr.) 113:3-15; 114:24- 115:16; Ex. SSS (Saleem Tr.) 61:1-7; Ex. RR (Jacob Tr.) 198:19-199:6; Ex. TTT (Islam Tr.) 137:15-138:3; Ex. XX (Gerald Tr.) 93:24-94:4; the sole difference is that, with the addition of a fresh food section, ASMs in these stores are required to check the expiration dates on dairy products, a process that takes around forty-five minutes (Ex. QQQ (Howland Tr.) 55:15-56:16; Ex. BBB (Ifill Tr. 114:24-115:16); Ex. SSS (Saleem Tr.) 61:8-15; Ex. RRR (Cedeno Tr.) 75:18-20; Ex. NNN (Ban Tr.) 96:18-24; Ex. RR (Jacob Tr.) 201:12-203:16).

[22] Ex. BBB (Ifill Tr.) 115: 17-20; Ex. RRR (Cedeno Tr.) 76:2-14; Ex. NNN (Ban Tr.) 95:6-11; Ex. UUU (Kudrna Tr.) 67:2-19.

Dated:     October 26, 2012
           New York, New York

                                                       Respectfully submitted,

**OUTTEN & GOLDEN LLP**
By:

/s/ Adam T. Klein
    Adam T. Klein

**OUTTEN & GOLDEN LLP**
Adam T. Klein
Molly A. Brooks
Sandra E. Pullman
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

Seth R. Lesser
Fran L. Rudich
Michael J. Palitz
Mark W. Gaffney
**Klafter, Olsen & Lesser LLP**
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200