**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MANI JACOB and LESLEENA MARS,
individually and on behalf of all others similarly
situated,

                         Plaintiffs,

                v.

DUANE READE, INC. and DUANE READE
HOLDINGS, INC.,

                    Defendants.

**No. 11 Civ. 160 (JPO)(JCF)**

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENT, PROPOSED NOTICE OF SETTLEMENT,**
**AND CLASS ACTION SETTLEMENT PROCEDURE**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

I.      FACTUAL AND PROCEDURAL BACKGROUND........................................... 1

II.     THE PARTIES HAVE ENTERED INTO A SETTLEMENT
        THAT IS IN THE BEST INTERESTS OF THE CLASS. ................................. 3

        A.      The Settlement Fund. ............................................................................ 3

        B.      The Settlement Classes. ........................................................................ 4

        C.      Settlement Awards to Participating Class Members............................. 4

        D.      Releases.................................................................................................. 5

        E.      Confidentiality and Nondisparagement. ............................................... 5

        F.      Attorneys' Fees. .................................................................................... 6

        G.      Claims Administrator............................................................................. 6

        H.      Service Payments. ................................................................................. 7

III.    CLASS ACTION SETTLEMENT PROCEDURE. ........................................... 8

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE. .............. 10

        A.      The Settlement Is Fair, Reasonable, and Adequate. ........................... 11

                1.      Litigation Through Trial Would Be Complex, Costly, and Long
                        (*Grinnell* Factor 1). ................................................................... 12

                2.      The Court Cannot Assess the Reaction of the Class Until After
                        Notice Issues (*Grinnell* Factor 2)............................................... 14

                3.      Discovery Has Advanced Far Enough to Allow the Parties to
                        Resolve the Case Responsibly (*Grinnell* Factor 3)................... 14

                4.      Plaintiffs Would Face Real Risks of Establishing Liability and
                        Damages If the Case Proceeded (*Grinnell* Factors 4 and 5). ............ 15

                5.      Establishing and Maintaining the Class Through Trial
                        Presents Risk (*Grinnell* Factor 6). ........................................... 17

                6.      Defendants' Ability to Withstand a Greater Judgment Is Not
                        Determinative (*Grinnell* Factor 7). .......................................... 18

7.      The Settlement Fund Is Substantial, Even in Light of the Best
        Possible Recovery and the Attendant Risks of Litigation
        (*Grinnell* Factors 8 and 9)........................................................................ 18

V.      THE NOTICE PLAN AND CLAIMS PROCESS ARE APPROPRIATE....................... 20

CONCLUSION................................................................................................................ 21

**TABLE OF AUTHORITIES**

CASES                                                                                                    PAGE(S)

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000),
    *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .............12, 14, 15, 18

*Ballinger v. Advance Magazine Publishers, Inc.*,
    No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014)......................................14, 18

*Bell v. Citizens Fin. Group, Inc.*,
    No. 10 Civ. 320 (W.D. Pa. Apr. 21, 2013) ............................................................................16

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)................................................19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...............................................................................................11, 19

*Clark v. Ecolab Inc.*,
    No. 04 Civ. 4488, 2010 WL 1948198 (S.D.N.Y. May 11, 2010)...........................................12

*Clements v. Serco, Inc.*,
    530 F.3d 1224 (10th Cir. 2008) ..............................................................................................17

*Craig v. Rite Aid Corp.*,
    No. 08 Civ. 2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ..................................................17

*Desmond v. PNGI Charles Town Gaming, L.L.C.*,
    630 F.3d 351 (4th Cir. 2011) ...................................................................................................17

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    Nos. 05 Civ. 10240, *et al.*, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)..............................11

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)...............................................................................10, 18, 19

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................................12

*Glass v. UBS Fin. Servs., Inc.*,
    No. 06 Civ. 4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
    *aff'd,* 331 F. App'x 452 (9th Cir. 2009)..................................................................................20

*Granada Invest., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) .................................................................................................15

*Greko v. Diesel U.S.A., Inc.*,
   No. 10 Civ. 2576, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ..........................................20

*Henry v. Quicken Loans, Inc.*,
   No. 04 Civ. 40346 (E.D. Mich. March 17, 2011) ...................................................16

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ...................................................15

*Jacob v. Duane Reade, Inc.*,
   289 F.R.D. 408 (S.D.N.Y. 2013) ...................................................1, 2, 14, 18

*Jacob v. Duane Reade, Inc.*,
   293 F.R.D. 578 (S.D.N.Y. 2013) ...................................................1, 2, 14

*Jacob v. Duane Reade, Inc.*,
   602 F. App'x 3 (2d Cir. 2015) ...................................................2

*Jacob v. Duane Reade, Inc.*,
   No. 11 Civ. 160 (JPO), 2012 WL 260230 (S.D.N.Y. Jan. 27, 2012) ...................................................1, 2

*Jacob v. Duane Reade, Inc.*,
   No. 11 Civ. 160 (JPO), 2016 WL 3221148 (S.D.N.Y. June 9, 2016) ...................................................2

*Johnson v. Big Lots Stores, Inc.*,
   561 F. Supp. 2d 567 (E.D. La. 2008) ...................................................17

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. 2014) ...................................................10

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ...................................................12

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D.N.J. 2008) ...................................................16

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...................................................12

*Oppenlander v. Standard Oil Co.*,
   64 F.R.D. 597 (D. Colo. 1974) ...................................................16

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................15

*Perkins v. S. New England Tel. Co.*,
   No. 07 Civ. 967, 2011 WL 4460248 (D. Conn. Sept. 27, 2011) ...................................................17

*Perkins v. Southern New England Telephone Co Inc.*
   No. 07 Civ. 967 (D. Conn. Oct. 24, 2011) ...........................................................16

*Reyes v. Altamarea Grp., LLC*,
   No. 10 Civ. 6451, 2010 WL 5508296 (S.D.N.Y. Dec. 22, 2010)...........................20

*Sewell v. Bovis Lend Lease, Inc.*,
   No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)...........................15

*Snodgrass v. Bob Evans Farms, LLC*,
   No. 12 Civ. 768, 2015 WL 1246640 (S.D. Ohio Mar. 18, 2015) ...........................17

*Stefaniak v. HSBC Bank USA, N.A.*,
   No. 05 Civ. 720, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) ...........................12

*Stillman v. Staples, Inc.*,
   No. 07 Civ. 849, 2009 WL 1437817 (D.N.J. May 15, 2009) ...........................13, 16

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003).....................................................................15

*Torres v. Gristede's Operating Corp.*,
   Nos. 04 Civ. 3316, *et al.*, 2010 WL 2572937 (S.D.N.Y. June 1, 2010) ...................8

*In re Traffic Exec. Ass'n*,
   627 F.2d 631 (2d Cir. 1980)....................................................................................10

*Urnikis-Negro v. Am. Family Prosperity Servs.*,
   616 F.3d 665 (7th Cir. 2010) ..................................................................................17

*Valerio v. Putnam Assocs., Inc.*,
   173 F.3d 35 (1st Cir. 1999)......................................................................................17

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)..................................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).......................................................................................10

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)...............................................................................10, 14

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 .................................................................................................2, 8, 20

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.22 (4th ed.
   2002) ....................................................................................................................8, 10

## INTRODUCTION

Plaintiffs seek preliminary approval of the parties' settlement of this class and collective action lawsuit involving the unpaid wage claims of assistant store managers who worked for Duane Reade, Inc. and Duane Reade Holdings, Inc. ("Duane Reade" or "Defendants"). After over five years of hard-fought litigation, the parties have reached a proposed agreement to resolve Plaintiffs' wage and hour class and collective claims for $13.5 million. The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") collective and New York Labor Law ("NYLL") class action settlement because it resolves a *bona fide* dispute, was reached after contested litigation, was the result of arm's-length negotiations between counsel well-versed in wage and hour law, and satisfies all other criteria for the approval of a class action settlement.

With this motion, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Joint Conditional Stipulation of Settlement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of Molly Brooks in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement ("Brooks Decl."); (2) approve the proposed Notices of Proposed Settlement of Class Action Lawsuit and Fairness Hearing and the Claim Form and Release Notice of Class Action Settlement, attached as Exhibits B, C, and D to the Brooks Declaration (collectively, the "Notice Packet"), and direct their distribution; and (3) approve the proposed schedule for final settlement approval.

## I.   FACTUAL AND PROCEDURAL BACKGROUND.

This Court is well-versed with the facts and history of this litigation, having presided over multiple hearings and briefings. A comprehensive history of the case is described in this Court's and the Second Circuit Court of Appeals' previous rulings, including *Jacob v. Duane Reade, Inc.,* No. 11 Civ. 160 (JPO), 2012 WL 260230, at *4 (S.D.N.Y. Jan. 27, 2012) ("*Jacob I*"); *Jacob v. Duane Reade, Inc.,* 289 F.R.D. 408 (S.D.N.Y. 2013) ("*Jacob II*"); *Jacob v. Duane Reade, Inc.,*

293 F.R.D. 578 (S.D.N.Y. 2013) (*"Jacob III"); and Jacob v. Duane Reade, Inc.,* 602 F. App'x 3 (2d Cir. 2015) (*"Jacob IV"*).

This case sought to recover overtime wages on behalf of current and former assistant store managers ("ASMs") who worked for Duane Reade.  Duane Reade settled overtime claims for ASMs in 2009 in an earlier suit, *Damassia v. Duane Reade,* after the district court granted class certification.  However, because Plaintiffs asserted that Duane Reade continued its practice of requiring ASMs to perform primarily nonexempt work while working over 50 hours per week, Plaintiffs filed this action in January 2011, alleging that no material structural changes were made to the ASM position and that ASMs continued to be misclassified as exempt from overtime.

In January 2012, this Court granted conditional FLSA certification, finding ASMs "similarly situated."  *See Jacob I*, 2012 WL 260230, at *4.  On March 20, 2013, the Court certified a NYLL class under F.R.C.P. 23(b)(3).  *See Jacob II*, 289 F.R.D. 408.  Addressing Duane Reade's motion for reconsideration of *Jacob II* based on intervening U.S. Supreme Court case law, the Court upheld certification of a liability class, under F.R.C.P. 23(c)(4), but decertified the class as to damages.  *See Jacob III*, 293 F.R.D. 578.  Duane Reade appealed, but on February 10, 2015, the Second Circuit affirmed *Jacob II* and *III* by summary order.  *See Jacob IV*, 602 F. App'x 3.

Prior to and following this motion practice, the parties engaged in extensive class-wide discovery, taking the depositions of 41 ASMs, 12 corporate fact and Rule 30(b)(6) witnesses, and engaging in substantial document production.  *See* Brooks Decl. ¶¶ 17-19.  Following this, Duane Reade moved again to decertify the class and collective action.  In its June 9, 2016 Order, this Court denied Duane Reade's motion.  *See Jacob v. Duane Reade, Inc.*, No. 11 Civ. 160 (JPO), 2016 WL 3221148, at *2 (S.D.N.Y. June 9, 2016) ("*Jacob V*").

Prior to the Court issuing its Order in *Jacob V*, the parties agreed to restore settlement negotiations and devoted substantial time and effort to reach a proposed settlement.  Brooks Decl.

2

¶ 20.  On or around May 24, 2016, the parties agreed to participate in mediation, and engaged the services of experienced mediator, Martin Scheinman, Esq.  *Id.* ¶ 22.  In advance of mediation, the parties provided mediation statements to the mediator, and Plaintiffs performed damages calculations based on the data provided in discovery.  *Id.* ¶ 23.

On July 13, 2016, the parties attended a full-day mediation session with Mr. Scheinman. *Id.* ¶ 24.  While the parties gained valuable knowledge about the strengths and weaknesses of their prospective claims and defenses at mediation, it did not result in an immediate settlement.  *Id.* ¶ 25.  Counsel for the parties continued to negotiate with the assistance of Mr. Scheinman, which resulted in an agreement on the settlement amount and key terms on or about July 26, 2016.  *Id.* ¶ 26.

The parties continued to negotiate over additional terms of the settlement for the next several months, twice asking the Court to extend the deadline to submit this motion in order to continue those discussions.  *See* ECF Nos. 204, 206.  The parties drafted a proposed Settlement Agreement that incorporated all material terms resulting from these negotiations.  *See* Brooks Decl. ¶ 27.  Over the following weeks, the parties continued to negotiate over the text of the proposed notice informing class members about the settlement.  *Id*. ¶ 28.  After extensive discussion, the parties reached agreement on these remaining issues on January 5, 2017.  *Id*. ¶ 29.

At all times, the negotiations were conducted at arms' length and were decidedly vigorous in reaching the ultimate Settlement Agreement.  *Id.* ¶ 30.

## II.    THE PARTIES HAVE ENTERED INTO A SETTLEMENT THAT IS IN THE BEST INTERESTS OF THE CLASS.

### A.    The Settlement Fund.

Pursuant to the Settlement Agreement, Duane Reade will pay $13,500,000 to resolve ASMs' class and collective claims.  Ex. A (Settlement Agreement) ¶ 3.1. This settlement amount

covers Settlement Payments[1] to members of the Settlement Class (as defined in section II.B, *infra*), any Court-approved service payments to Named Plaintiffs, any Court-approved attorneys' fees, costs, and expenses, payroll taxes, and the fees and costs of the Claims Administrator. *Id.* The remainder of the settlement amount after deductions for payment of these items is the Net Settlement Payment. *Id.* ¶ 1.15.

**B.     The Settlement Classes.**

The Settlement Class members include two groups: the FLSA Settlement Collective (those ASMs who worked at Duane Reade retail drugstores at any time from January 8, 2009, to November 3, 2016, who have previously filed consent-to-join forms with the Court during the litigation); and NY Rule 23 Class members (those ASMs who worked at Duane Reade retail drugstores in the State of New York at any time from January 8, 2009, to November 3, 2016, and who have not filed an exclusion form in the litigation), who must file a claim form to be included in the settlement. *Id.* ¶¶ 1.2; 1.13. The approximate total number of individuals eligible to participate in the settlement is 1,075. *See* Brooks Decl. ¶ 13.

The Settlement Agreement allows New York Rule 23 Settlement Class members to object or opt out of the settlement, and for FLSA Settlement Collective members to withdraw their consent, if they choose to do so in order to move forward with their own individual claims against Duane Reade and not participate in this settlement. Ex. A (Settlement Agreement) ¶ 2.5(A) & (B).

**C.     Settlement Awards to Participating Class Members.**

All Settlement Class members who submit a timely Claim Form, as well as all FLSA Settlement Collective Members who do not exclude themselves, become Participating Class Members and will be paid a pro rata portion of the Net Settlement Payment pursuant to an

---

[1]       Unless otherwise indicated, all capitalized terms are defined and described fully in the Settlement Agreement.

allocation formula based on the number of weeks they worked during the relevant period.  *Id.* ¶¶

3.2, 3.6.[2]  Assuming the formula is approved, the Claims Administrator will prepare checks for

each Participating Class Member for their share and mail them within 15 days after Duane Reade

funds the settlement.  *Id.* ¶ 3.3(B).

Settlement Class members will be responsible for the employees' share of income and

payroll taxes.  *Id.* ¶ 1.11.

> **D.   Releases.**

All Settlement Class Members who submit a valid Claim Form release all FLSA wage

and hour law claims in connection with their work as an ASM with Duane Reade.  *Id.* ¶ 4.2.  In

addition, all New York Rule 23 Settlement Class members who do not exclude themselves from

the settlement release their NYLL wage claims in connection with their work as an ASM with

Duane Reade.  *Id.* ¶ 4.1.  The Named Plaintiffs, who upon Court approval will receive a service

payment (as outlined below) will release all claims relating to their employment with Duane

Reade except those that cannot be waived by law.  *Id.* ¶ 4.4.

> **E.   Confidentiality and Nondisparagement.**

The settlement agreement provides for limited confidentiality and nondisparagement.

The Named Plaintiffs and Class Counsel agree not to publicize the terms of the agreement, their

negotiation, or other matters relating to the action, although they are permitted to make truthful

---

[2]      Specifically, Participating Class Members will be assigned one point for each week
worked as an ASM for Duane Reade between January 9, 2009, and 30 days after this Court
grants the instant motion.  *Id.*  The Claims Administrator will then add all points for the
Participating Class Members to obtain the "Total Denominator," and then divide the number of
points for each Participating Class Member by the Total Denominator to obtain each
Participating Class Member's Portion of the Net Settlement Payment.  *Id.* ¶ 3.6(D).  The Claims
Administrator will then multiply the Participating Class Member's proportionate share of the Net
Settlement Payment by the Net Settlement Payment (after deducting any court-awarded
attorneys' fees and costs, service awards, and claims administration fees) to determine the
Participating Class Member's Settlement Award.  *Id.*

statements about the underlying claims or litigation. *Id.* ¶ 5.12. The Named Plaintiffs, Participating Class Members, and Class Counsel agree that for three years they will not make defamatory or disparaging statements about Duane Reade or its business or products (although again, they are permitted to make truthful statements about the facts underlying their claims or the litigation). *Id.* ¶ 5.13. The notice to the Class Members will inform them of this obligation. Ex. B (Rule 23 Notice) ¶ 9; C (FLSA Notice) ¶ 9. Finally, Class Counsel will remove references to this case from their websites or social media, except for limited references to the fact and general nature of the settlement. Ex. A (Settlement Agreement) ¶ 5.15.

These confidentiality and nondisparagement provisions were included at the request of Duane Reade, and agreed upon by Class Counsel. Class Counsel believes they are not in a position to reject a settlement on behalf of their clients based on this provision. If the Court has any questions, Plaintiffs' counsel will address these issues more fully at the time of final approval.

### F.     Attorneys' Fees.

Class Counsel will apply to receive one-third of the $13,500,000 Settlement Payment ($4,500,000) as attorneys' fees, plus reimbursement of reasonable out-of-pocket costs and expenses. *Id.* ¶ 3.4. Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiffs will move separately for Court approval of their attorneys' fees and costs simultaneously with their Motion for Final Approval of the Settlement.

### G.     Claims Administrator.

The parties will select a third-party settlement claims administrator ("Claims Administrator") to send the Notice Packet to Settlement Class Members, calculate Settlement Payments pursuant to the allocation formula outlined in Section II.C, *supra*, and distribute

checks to Participating Class Members. *Id.* ¶ 2.1. The Claims Administrator will be paid for its services from the settlement fund. *Id.*

The Notice Packet will advise the NY Rule 23 Settlement Class Members how to submit a claim form, and will inform them of their right to exclude themselves from the settlement and how to do so. *See* Ex. B (Rule 23 Notice) ¶ 14. It will also advise them that they have the right to object to the settlement. *Id.* ¶ 13. The deadline for opting out and objecting will be thirty days from the mailing of the Notice Packet, unless the Notice Packet is returned undeliverable and an updated address is found, in which case, the thirty-day period for any such NY Rule 23 Settlement Class Member will begin to run from the date of the final mailing to such Class Member.

Members of the FLSA Collective will receive a different notice informing them that they are already included in the settlement, and advising them of their ability to opt out if they so choose and explaining how to do so. *See* Ex. C (FLSA Notice) ¶ 13.

### H.    Service Payments.

In addition to their payments under the allocation formula, Plaintiffs will apply for service payments for Named Plaintiffs Mani Jacob and Lesleena Mars in the amount of $5,000 each. *Id.* ¶ 3.5. These service payments are intended to compensate the Named Plaintiffs for the services they performed for the class and collective, the time they spent on this case, and the risks they assumed in connection with this litigation. Plaintiffs will move separately for Court approval of these – as will be shown, proper and reasonable – service payments simultaneously with their Motion for Final Approval of Settlement. Brooks Decl. ¶ 36.

III.    **CLASS ACTION SETTLEMENT PROCEDURE.**

Rule 23's class action settlement procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.    Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), §§ 11.22, *et seq.* (4th ed. 2002); *see also Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, *et al.*, 2010 WL 2572937, at *3-5 (S.D.N.Y. June 1, 2010).  This process safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of the class's interests.

With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement and authorizing the Claims Administrator to send the proposed Notice to Settlement Class members.

The parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.    Within 21 business days of the Preliminary Approval Order, Defendants will provide the Claims Administrator with contact information for Settlement Class members.  Ex. A (Settlement Agreement) ¶ 2.4(A).

2.    Within 10 business days after receiving the contact information described above, the Claims Administrator will mail the Notice Packet to all Settlement Class members via First Class Untied States mail, postage prepaid.  *Id.* ¶ 2.4(B).  If any Notice Packets are returned to the Claims Administrator as undeliverable, the Claims Administrator will take reasonable steps to obtain the correct address of that Settlement Class member.  *Id.*

3.    Settlement Class members will have 30 days after the date the Notice Packets are mailed to submit a valid Claim Form, or if the Notice Packet is returned undeliverable, the remainder of the 30-day period. *Id.* ¶ 3.2(A).

4.    NY Rule 23 Settlement Class members may exclude themselves from the settlement by utilizing the exclusion instructions outlined in the Notice Packet, within 30 calendar days from the final mailing of the Notice Packet. *Id.* ¶ 2.5(A). NY Rule 23 Settlement Class members may object to the settlement by sending a valid objection to the Claims Administrator by utilizing the objection instructions outlined in the Notice Packet, within 30 calendar days from the final mailing of the Notice Packet. *Id.* ¶ 2.6.

5.    A final fairness hearing will be held as soon as is convenient for the Court after the end of the opt-out period.

6.    Plaintiffs will file Motions for Final Approval of Settlement, for Attorneys' Fees and Costs, and Service Payments with the Court no later than fifteen (15) days before the fairness hearing is conducted. *Id.* ¶ 2.7(A).

7.    After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no party appeals the Court's Final Order and Judgment, the Effective Date of the Settlement Agreement will follow after the Court enters its Final Approval Order. *Id.* ¶ 1.10.  If an individual or party appeals the Court's Final Order and Judgment, the Effective Date shall be the date on which all such appeals (including petitions for rehearing or re-argument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review) have been finally disposed of and can no longer be appealed or reviewed. *Id.*

8.    If the Court does not enter a Final Order and Judgment in accordance with the Settlement Agreement, or the judgment does not become final, the litigation will resume unless the parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Court will authorize notice to Settlement Class members that the settlement did not receive final approval and that, as a result, no payments will be made under the settlement. *Id.* ¶ 2.9.

9.    Duane Reade will fund the settlement within 15 days of the Effective Date, and the Claims Administrator will mail settlement checks to Settlement Class members within 15 days after the settlement is fully funded. *Id.* ¶ 3.3(A).

IV.     **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE.**

The law favors compromise and settlement of class action suits.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also* Newberg § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

"Preliminary approval … requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties."  *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (internal quotation marks omitted).  To grant preliminary approval, the court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (internal quotation marks omitted); Newberg § 11.25 ("[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (3d ed.) § 30.41).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (internal citation omitted).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (internal citation and quotation marks omitted).

If the settlement was achieved through arm's-length negotiations involving experienced counsel, then "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.,* Nos. 05 Civ. 10240, *et al.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Preliminary approval is the first step in the settlement process.  It simply allows notice to issue and for NY Rule 23 Settlement Class members to object to or opt out of the settlement and FLSA Settlement Collective members to withdraw their consent, if they so choose in order to remove themselves from this settlement.  After notice issues, the Court will be able to evaluate the settlement with the benefit of Settlement Class members' input.

A.    **The Settlement Is Fair, Reasonable, and Adequate.**

More than three decades ago, in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), the Second Circuit Court of Appeals set forth the analytical framework for evaluating the substantive fairness of a class action settlement. This framework, known as the *Grinnell* factors, guides district courts by setting out the following factors for determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id.* at 463.

In approving FLSA settlements, courts have considered factors similar to those employed in the Rule 23 context, namely whether the settlement resulted from contested litigation and

whether it represents a fair and adequate resolution.  *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008); *Clark v. Ecolab Inc.*, No. 04 Civ. 4488, 2010 WL 1948198, at *7 (S.D.N.Y. May 11, 2010). Accordingly, the discussion below of the individual *Grinnell* factors applies to the FLSA collective settlement claims as well.

**1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a settlement prior to trial, Plaintiffs will avoid further expense and delay in obtaining a recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  Particularly in complex wage and hour litigation like this one, involving both federal and state statutory rights, protracted litigation is costly and burdensome, including motion practice and potential appeals over class certification. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *4 (S.D.N.Y. Mar. 24, 2008).  The continued process of litigating would have been time consuming, as experience has often shown in wage and hour cases.

This case is no exception, with 1,075 Settlement Class members and both federal FLSA and state NYLL wage claims.  Although the parties have already undertaken significant time and expense in litigating this matter, further litigation would result in additional and perhaps unnecessary expense and delay, and such expense and delay could be disproportional to any likely recovery.  Barring settlement, the parties would expect to engage in extensive motion

practice as to dispositive motions, motions *in limine*, and oppositions to such motions.
Additional depositions of trial witnesses might also take place, which could lead to further
document productions.  To establish the nature of the ASM position and the applicability of
exemptions to the FLSA and NYLL, a complicated trial would have been necessary, featuring
extensive testimony by Duane Reade managers and executives, Class Members, and possibly
expert testimony.  Preparing and presenting testimonial and documentary evidence with respect
to the complex factual and legal issues at such a trial would have consumed tremendous amounts
of time and resources, as well as requiring substantial judicial resources to adjudicate the parties'
disputes.  A trial of liability issues would be costly and further delay resolution.  Furthermore,
any judgment could be appealed, thereby extending the duration of the litigation.  If Plaintiffs
prevailed at trial and on appeal, it could nevertheless have taken a significant period of time for
class members to receive payment of any judgment.[3]  A post-trial motion to decertify the class
and collective would be likely.  And damages would not be assessed until individual damages
proceedings had been completed sufficiently to allow for either complete resolution of all claims
or a settlement on damages issues.  Litigation over liquidated damages and attorneys' fees could
follow.  Finally, any judgment would likely be appealed, further extending the litigation.  This
settlement, on the other hand, provides significant relief to Settlement Class members in a

---

[3]      Indeed, Class Counsel here is particularly well aware of the risks and delays associated
with proceeding to trial in wage and hour cases. The Klafter Olsen firm in 2009 tried one of the
few FLSA collective actions of any substantial size involving multistate claims that has
proceeded to a jury trial. *See Stillman v. Staples, Inc.*, No. 07 Civ. 849, 2009 WL 1437817
(D.N.J. May 15, 2009).  That trial, even after an exceedingly expedited schedule, consumed six
weeks, hundreds of thousands of dollars, and presented numerous contested issues of both law
and fact.  Although a jury verdict was obtained, the post-trial motion practice that followed was
extensive and included, among other things, motions for judgment notwithstanding the verdict,
over the proper method of calculating damages, and for decertification of the collective. *See*
Brooks Decl. ¶ 11.

prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.    The Court Cannot Assess the Reaction of the Class Until After Notice Issues (*Grinnell* Factor 2).

Because Class Members have not been notified of the settlement, the Court will be in a better position to more fully analyze this factor after notice issues and the Settlement Class members have an opportunity to opt out, object to, or withdraw from the settlement.  Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

The parties have completed ample discovery, and are well positioned to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin*, 391 F.3d at 537 (citations and internal quotation marks omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Holocaust Litig.*, 80 F. Supp. 2d at 176 (citation and internal quotation marks omitted); *see also Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *2 (S.D.N.Y. Dec. 29, 2014) (granting preliminary approval where case was "settled before depositions were conducted, . . . [but] both sides were well acquainted with the facts and the nature of the various internships at issue").

The parties' discovery here far exceeds this standard.  The parties had substantially completed extensive discovery and were preparing for trial before mediation.  *See Jacob II,* 289 F.R.D. 408; *Jacob III,* 293 F.R.D. 578.  In the course of that discovery, the parties deposed 41 ASMs, and Plaintiffs deposed 17 corporate fact and Rule 30(b)(6) witnesses, and exchanged substantial document and data discovery.  Brooks Decl. ¶¶ 17-19.  With this work complete, just

14

prior to entering mediation, Plaintiffs' counsel had begun preparing for trial, and were in the midst of conducting a comprehensive view of the record, planning the *in limine* motions, selecting witnesses, and interviewing Plaintiffs and opt-ins.  *Id.* ¶ 21.  The parties were thus well positioned to evaluate the strength of their respective positions.  This factor favors preliminary approval.  *Compare Sewell v. Bovis Lend Lease, Inc*., No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012) (granting final approval where the parties exchanged documents and plaintiffs' counsel interviewed class members).

### 4.    Plaintiffs Would Face Real Risks of Establishing Liability and Damages If the Case Proceeded (*Grinnell* Factors 4 and 5).

"Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Although Plaintiffs believe their case is strong, it is thus subject to risk.  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted).

Here, Plaintiffs recognize the substantial risks of proceeding to trial, including the possibility that a trial might not result in any recovery or might result in a recovery less favorable to the Settlement Class.  Plaintiffs would have to prevail at trial and on appeal, a process which is inherently uncertain and lengthy.  But even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement."  *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1206 (6th Cir. 1992) (quotation omitted).  The proposed settlement "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road."  *Strougo v. Bassini,* 258 F. Supp. 2d 254, 260

(S.D.N.Y. 2003).  Under these circumstances, it is proper for the parties "to take the bird in the hand instead of the prospective flock in the bush."  *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

Further, the estimated potential recovery must account for a large number of legal and factual contingencies.  These include how many hours the average employee worked (a matter that might have to be proven up individually in some 1,075 subsequent proceedings); how many weeks per year the average employee worked those hours; whether the employees could obtain a third year of damages under the FLSA (a question of willfulness) and liquidated damages under the FLSA (a question of good faith) and/or equivalent statutory penalties under the NYLL. These fact-intensive questions depend on favorable legal determinations.  When misclassification cases reach juries, the results can be unpredictable.  *Compare, e.g., Stillman*, 2009 WL 1437817 (collective action plaintiffs' verdict) *with Perkins v. Southern New England Telephone Co Inc.* No. 07 Civ. 967, ECF No. 578 (D. Conn. Oct. 24, 2011) (collective action defendant's verdict); *Henry v. Quicken Loans, Inc.,* No. 04 Civ. 40346, ECF No. 707 (E.D. Mich. March 17, 2011) (collective action defendant's verdict); *Bell v. Citizens Fin. Group, Inc.*, No. 10 Civ. 320, ECF No. 259 (W.D. Pa. Apr. 21, 2013) (collective action defendant's verdict).

Moreover, in addition to the risks of proving the merits of the claim and maintaining a class and collective action through trial, Plaintiffs would also face risk in the determining the proper method for calculating damages.  The parties dispute whether the "fluctuating workweek" method of calculating damages applies here, i.e., whether overtime should be calculated at half-time rates or time-and-a-half rates.  *See McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 462 (D.N.J. 2008) (that parties "insisted on vastly different methodologies for determining damages" counseled in favor of settlement).  Duane Reade has asserted that the half-time overtime method is proper for misclassification claims.  *See* ECF No. 106 (Defs.' Mot. for Reconsideration); *see*

16

also *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351 (4th Cir. 2011) (adopting

half-time calculation); *Urnikis-Negro v. Am. Family Prosperity Servs.*, 616 F.3d 665 (7th Cir.

2010) (same); *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008) (same); *Valerio v. Putnam*

*Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999) (same).  Some district courts, including within this

circuit, have questioned the applicability of the half-time method to damage calculations.  *See,*

*e.g., Snodgrass v. Bob Evans Farms, LLC*, No. 12 Civ. 768, 2015 WL 1246640, at *6-15 (S.D.

Ohio Mar. 18, 2015) (rejecting half-time calculation as applied to misclassification cases);

*Perkins v. S. New England Tel. Co.*, No. 07 Civ. 967, 2011 WL 4460248, at *2-4 (D. Conn. Sept.

27, 2011) (same).  The risk posed by this unsettled legal question weighs in favor of settlement.

*See Craig v. Rite Aid Corp.*, No. 08 Civ. 2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013)

(method of damage calculations was crucial unresolved issue that weighed in favor of settlement

approval).

     The requisite elements of risk all exist here.  District Judge Jones of the Middle District

of Pennsylvania captured this point in approving a hybrid FLSA retail misclassification case

settlement in which one of the Class Counsel here represented the class, writing, "[i]t is

undisputed that copious risks abound with respect to maintaining this action and establishing

liability." *Craig.*, 2013 WL 84928, at *9.  These words apply with full force here.

### 5.     Establishing and Maintaining the Class Through Trial Presents Risk (*Grinnell* Factor 6).

     Plaintiffs were successful in certifying the class and withstanding a motion to decertify,

and Duane Reade was unsuccessful in appealing those decisions.  However, Plaintiffs anticipate

that Duane Reade would attempt to decertify the class following trial, as the employer

successfully did in *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 569 (E.D. La. 2008),

even after withstanding a pre-trial motion to decertify the FLSA collective.  Moreover, the class

here was already decertified as to damages "in light of the need for individualized proof

necessary to determine monies potentially owed each ASM." *See Jacob II*, 289 F.R.D. at 411.

Given the Court's previous decision, obtaining class certification on damages is unlikely, which

leaves ASMs with a long process ahead to prove damages.  The settlement of these claims

ensures that the class will avoid the associated risks and delays.

> **6.     Defendants' Ability to Withstand a Greater Judgment Is Not
> Determinative (*Grinnell* Factor 7).**

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest

that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Holocaust Litig.*, 80 F.

Supp. 2d at 178 n.9) (internal brackets omitted).  Although Duane Reade has not suggested that it

is unable to pay a larger judgment, the settlement eliminates any risk of collection at a future date

by requiring Duane Reade to pay the full settlement amount within 15 days of the Effective Date.

Ex. A (Settlement Agreement) ¶ 3.3(A).  Accordingly, this factor is neutral.

> **7.     The Settlement Fund Is Substantial, Even in Light of the Best Possible
> Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8
> and 9).**

The settlement amount represents substantial value given the risks of litigation, even

though the recovery could be greater if Plaintiffs prevailed and maintained a class through trial

and on appeal and substantially prevailed in a sufficient number of individual damages

proceedings.  The determination of whether a settlement amount is reasonable "is not susceptible

of a mathematical equation yielding a particularized sum." *In re Holocaust Litig.*, 80 F. Supp. 2d

at 178 (quoting *Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993)); *see

also Ballinger*, 2014 WL 7495092, at *3 ("The inquiry with respect to this factor is to see

whether the settlement falls below the lowest point in the range of reasonableness.") (quoting *In

re Gache,* 164 F.3d 617, *2 (2d Cir. 1998)) (internal quotation marks omitted).  "Instead, there is

a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)) (internal quotation marks omitted).

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455, n.2. Here, the $13.5 million settlement is reasonable, because it is a substantial compromise of hotly disputed matters, providing significant benefits to members of the Settlement Class. Using conservative estimates of hours worked *and* assuming that the case went to trial as a collective action *and* assuming that Plaintiffs prevailed on (a) the core misclassification merits issue *and* (b) willfulness *and* (c) good faith, the value of the claims estimated by Plaintiffs for the unpaid overtime being settled here would range from approximately $ 17.3 million (assuming a half-time "FWW" damage analysis) to $61.4 million (assuming a full time and a half analysis). *See* Brooks Decl. ¶¶ 33, 34. If Plaintiffs prevailed on liability but were unable to disprove Duane Reade's good faith defense (meaning that liquidated damages would not be available), the maximum recovery would range from approximately $7.4 million (using a FWW analysis) to $26.3 million (using a time and a half analysis). *Id.* ¶ 34. The settlement therefore represents between 22% and 182% of the projected recovery (again, applying conservative underlying assumptions about the provability of hours worked). *Id.* ¶ 35. While Plaintiffs submit that such a settlement is an excellent result, in applying the standards for approval, there is nothing inherently suspect about a class action lawsuit that achieves a 20% recovery for class members. *See, e.g., Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *3 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *accord*

*Greko v. Diesel U.S.A., Inc.*, No. 10 Civ. 2576, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26,

2013) (approving class action settlement that recovered approximately 24% of allegedly unpaid

overtime); *Glass v. UBS Fin. Servs., Inc.*, No. 06 Civ. 4068, 2007 WL 221862, at *4 (N.D. Cal.

Jan. 26, 2007), *aff'd,* 331 F. App'x 452 (9th Cir. 2009) (approving class action settlement that

recovered 25-35% of allegedly unpaid overtime).  Although the parties dispute many points,

Plaintiffs and Class Counsel rationally concluded that the certainty of a substantial settlement

now was better than the theoretical hope to recover more at some time possibly years in the

future.

## V.      THE NOTICE PLAN AND CLAIMS PROCESS ARE APPROPRIATE.

Plaintiffs request that the Court approve the proposed Notice Packet for distribution.  The

Notice Packet fully complies with due process and Federal Rule of Civil Procedure 23.  Pursuant

to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual
> notice to all members who can be identified through reasonable effort. The notice
> must clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)     that a class member may enter an appearance through an attorney if the
>          member so desires;
> (v)      that the court will exclude from the class any member who requests
>          exclusion;
> (vi)     the time and manner for requesting exclusion; and
> (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice Packet satisfies each of these requirements.  The Notice Packet is written in

plain English and is organized and formatted so as to be as clear as possible.  It is based on the

model notice forms provided by the Federal Judicial Center ("FJC") on its website

(www.fjc.gov).  *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2010 WL 5508296, at *2

(S.D.N.Y. Dec. 22, 2010) (approving FLSA collective action notice based on FJC model);

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 224-25 (D.N.J. 2005) (same regarding

class settlement notice).  Additionally, the Notice Packet describes the terms of the settlement,

informs the class about the allocation of attorneys' fees and costs, and provides specific

information regarding the date, time, and place of the final approval hearing.  *See* Exs. B (Rule

23 Notice) ¶¶ 7, 11; C (FLSA Notice) ¶ 7,11.  It also informs class members of their obligations

relating to nondisparagement, and provides information about how individual class members'

recovery will be calculated.  *See* Exs. B (Rule 23 Notice) ¶¶ 8-9, C (FLSA Notice) ¶¶ 8-9.  The

Settlement Agreement provides that the Claims Administrator will mail the Notice Packets to the

last known address of each Settlement Class member within 31 days of the Court's preliminary

approval order.  Ex. A (Settlement Agreement) ¶ 2.4(A), (B).  The Claims Administrator will

take reasonable steps to obtain the correct addresses of any Settlement Class member whose

notice is returned as undeliverable and will attempt up to three additional attempts to locate

correct addressed and perform re-mailings.  *Id.* ¶ 2.4(B); Brooks Decl. ¶ 38.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the

Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated: January 6, 2017
        New York, New York

                                        Respectfully submitted,
                                        **OUTTEN & GOLDEN LLP**

                                        /s/ Molly A. Brooks
                                        Adam T. Klein
                                        Molly A. Brooks
                                        Michael J. Scimone
                                        685 Third Avenue, 25th Floor
                                        New York, New York 10017
                                        Telephone: (212) 245-1000

Facsimile: (646) 509-2060


KLAFTER OLSEN & LESSER LLP
Seth R. Lesser
Fran L. Rudich
Two International Drive, Suite 350
Rye Brook, New York 10573
Tel: (914) 934-9200

GOTTLIEB & ASSOCIATES
Jeffrey Gottlieb
Dana Gottlieb
150  East 18th Street, Suite PHR
New York, New York 10003
Telephone: (212) 228-9795

***Attorneys for Plaintiffs, the Class, and the
Collective***